[17]    \* JAMES P. FLINT *et al.* RESPONDENTS, *v.* JOSEPH
               H. LYON, APPELLANT.

PLEADING—DEFENSE IN ACTION ON CONTRACT.—A vendee may avail himself of
     fraud, breach of warranty, or failure of consideration, by way of defense, in an
     action upon a contract.

[1] WARRANTY, WHAT CONSTITUTES.—The use in a sale-note of a given name for
     the goods sold, is a warranty that they bear that name.

VENDEE—WHEN NOT CONCLUDED AS TO CONTRACT.— An acceptance of goods,
     bearing a name different from the one used in the sale-note, by a sub-vendee, of
     part of goods sold, does not conclude the vendee as to the whole contract.

APPEAL from the Fourth Judicial District.

This was an action to recover upon a contract for two thousand barrels of flour sold by plaintiffs to defendant, and named in the sale-note as Haxall flour. The complaint stated that the plaintiffs had tendered to the defendant the requisite number of barrels of flour, as a compliance with the contract on their part; that defendant refused to accept the flour so tendered, whereupon the plaintiffs sold it, and brought this suit for the difference between the contract price and the price realized.

The defense was that the defendant had demanded a delivery of the flour, according to the terms of the contract, or a recision of it, and that plaintiffs had failed to comply with the contract according to its terms.

Upon the close of the testimony, which is fully stated in the opinion of the Court, defendant moved for a nonsuit, which was refused, and he appealed.

*Saunders & Hepburn,* for Appellant.

The name used in the contract of sale is a warranty that the article sold corresponds. (5 Barn. and Ald. 240; 4 Cooper, 144; 2 Pick. 214; 2 Harr. & J. 495; Story on Contracts, 526, 527; 13 Mass. 144; 14 Mass. 106; 1 Johns. Ca. 341, 342; Ib. 168; 3 Bos. & P. 201, 506, 510, 514; 6 East. 382.)

---

[1] Approved in *Moore* v. *McKinlay,* 5 Cal. 474; *Bertram* v. *Lyon,* 1 McAll. 55, 57. See *Ring* v. *Norton, post* 359.

There was no contract, because of error by both parties in regard to the subject matter of the contract. (1 Poth. 12; 7 * Rob. 172; 10 Rob. 404; 2 Sumner, 395; [18] 1 Pet. 63–70; *Leach* v. *Mullet*, 3 Carr. & P. 115; 14 C. L. R. 479; Chitty--on Contracts, 297; Puffendorf, B. 1, Chap. 3, Sec. 12.)

*Hackett & Judah, Brooks & Martin,* for Respondents.

The contract is entire. ( 12 John. R. 165; Story on Contracts, Sec. 23; 6 T. R. 320; 5 Denio R. 406; 5 Met. 453.) The contract was executed. (5 B. & A. 313; Story on Sales, Sec. 290; 4 B. & C. 947.) The purchaser must return the goods received, or he cannot rescind the contract. (*Hunt* v. *Silk,* 5 East. 449; *Miner* v. *Bradley,* 22 Pick. R. 457.) The misstatement forms the subject of compensation. (1 Camp. 340; 1 Wood & Rob. 207.) To avoid a contract the misdescription must affect a material and substantial part of the contract. (Story on Contracts, 340-1—note; 3 Camp. 284; 1 Ry. and Mood, 39; *Stewart* v. *Alliston,* 1 Wend. 26.) The word "Haxall" was mere representation. (7 Mass. 286; 7 S. & R. 480; 1 Ark. 269; 20 Johns. 196; 3 Bibb. 35; 4 Hob. 451; 3 Dana, 129; 2 Sears, 22; 18 Vt. 390.) The misrepresentation, however delusive, forms no ground for the recision of the contract. (3 Dana, 479; 12. Vt. 505.) Vendee must resort to his action on the warranty. (2 Hill, 288; 3 Hamp. 581; 10 Watts, 107; 19 Vt. 536; 12 Wheat. 183; 8 Wend. 109.)

Mr. Ch. J. MURRAY delivered the opinion of the Court. Mr. J. HEYDENFELDT concurred.

This was an action to recover the contract price of two thousand barrels of flour. The facts of the case are these: On the 13th of January, the plaintiffs sold the defendant a cargo of flour, and executed a sale-note in these words:

" SAN FRANCISCO, January 13th, 1853.
" Sold, this day, to Joseph Lyon, Esq., the cargo of Haxall flour now on board of the bark Ork, lying in the harbor,

and being about two thousand barrels, on the following terms and conditions, viz: Joseph H. Lyon, Esq., agrees to pay Messrs. Flint, Peabody & Co., thirty dollars per barrel for all such as shall inspect "superfine," and twenty-seven dollars per barrel for such as shall inspect "bad;" payments to be made as it may be delivered, and to [19] be received and paid for on or * before the expiration of three weeks from date. If Messrs. Flint, Peabody & Co. elect, they can land and store the flour at the expiration of one week, or so much as may remain on board at that time, Mr. Lyon paying storage and drayage expenses."

On the 25th of January, the defendant sent a note, requesting the delivery of fifty barrels of the cargo, and the plaintiffs executed the following delivery order:

"SAN FRANCISCO, Jan. 25th, 1853.
"Capt. of bark 'Ork:'
"Please deliver the bearer fifty barrels superfine flour, and oblige,                    FLINT, PEABODY & CO."

In compliance with this order, fifty barrels of "Gallego" flour was delivered to one Gorham, the sub-vendee of the defendant, who received the same, and failed to inform the defendant that the flour did not conform to the warranty.

On the 31st of January, the defendant sold another lot of said flour, and gave the purchaser an order for it; but on discovering that the flour was "Gallego," and not "Haxall," the purchaser refused to receive it, and notified the defendant, who, on learning the mistake, refused to comply with the contract by receiving and paying for the flour; whereupon the plaintiffs sold the same upon account of the defendant, and brought this action to recover the difference.

Testimony was introduced to show the rapid decline of flour in the market after the 13th of January, and also to show that there was no difference in the value of "Gallego" and "Haxall" flour.

The argument of this case has embraced a wider range of principle and authority than the facts will justify.

It is contended that the sale was an entirety; that delivery of part is the delivery of the whole; that consequently the acceptance of fifty barrels by Gorham, the defendant's vendee, was a complete acceptance of the cargo of the bark "Ork," and that defendant cannot escape from the consequences of this suit, except by returning the fifty barrels received, and rescinding the contract.

* Whatever doubt may have existed at one time, it    [20] is now clearly settled by the modern decisions of the Courts, that the vendee may avail himself of fraud, breach of warranty, or failure of consideration, by way of defense in an action upon the contract.     On this point, the decisions are clear, and the authorities cited by the respondent's counsel are applicable to a different class of cases: cases where the vendee brings his action to recover the purchase-money.

In the case cited, of the purchase of a cow and so many pounds of hay, where the vendee kept the cow and brought his action for money had and received, it was held that the suit would not lie, because the party had mistaken his form of action, but that he would have been entitled to recover on his warranty.

To avoid circuity, by driving the defendant to a cross action on his warranty, he is permitted to set up these matters in defense, either in mitigation of damages, or as a complete answer to the whole case.     (See *Ruiz* v. *Norton*, decided last term; *Poulton* v. *Lattimore*, 17 Eng. C. L. Repts. 259.)

Was the defendant concluded by the acceptance of fifty barrels of flour by Gorham, and bound to receive the whole cargo, though of a different brand from that purchased?

Much stress has been laid on the fact that the defendant did not specify the brand of the flour in the order given to Gorham, but simply described it as part of the cargo of the bark "Ork"; and it is argued that the delivery order, signed by the plaintiffs, for fifty barrels of *superfine flour*, when taken in connection with the order of the defendant, is a significant circumstance, going to show that superfine

flour, without regard to any particular brand, was all that the parties intended to purchase or sell.

To our mind the inference is directly the contrary. The cargo of the bark " Ork " had been sold as " Haxall " flour, and fifty barrels of said cargo must be supposed to mean fifty barrels of " Haxall " flour.

This flour was to be inspected " superfine" and " bad," and the delivery order of Flint, Peabody & Co. for [21]  ·fifty barrels of *superfine flour, must necessarily relate to the " Haxall " flour which· should inspect " superfine."

It is a matter of no consequence that there was at the time little or no difference between the prices of Haxall and Gallego flour. What the inducement was to the defendant to purchase Haxall, we know not; but having purchased that particular brand, he was. entitled to it, and could not be compelled to accept any other as a substitute.

The use of the word " Haxall " in the sale-note amounted to a warranty that the flour was Haxall. ( 5 Barn. & Ald. 240; 17 Eng. C. L. Repts. 263; 2 Pick. 214; 13 Mass. 144.)

How, then, stands the case? The contract was founded in mistake, both parties supposing they were contracting concerning a certain article which had no existence, consequently the contract was void for want of the substance of the thing contracted for. Could then the acceptance of a different article than the one sold by Gorham, the subvendee, conclude the defendant? Certainly not! This would operate as a surprise and fraud on the defendant, and collusions to defraud the vendee would too often occur to warrant the establishment of such a rule.

The defendant, under the contract of sale, had no authority to call on the plaintiff for any except a certain brand of flour, and the substitution of a different brand or quality by the defendant's vendee, cannot affect the defendant's right in the premises.

To compel the defendant to return the flour received would be requiring an impossibility·which the law does

not impose; besides, we have shown that it was not a part delivery in compliance with the terms of the contract.

It has been argued that the defendant is concluded by his laches, in not ascertaining sooner the quality and brand of the flour.   We do not think so: it was as much the duty of the plaintiffs to know what they sold, as the defendant to ascertain what he purchased; and in this instance they stand alike, both guilty of negligence.

From this it follows that the decision of the Court below is erroneous, and must be reversed, and the cause remanded.