BERTRAM, The, (DILL v.)　See Case No. 3,-910.

---

## Case No. 1,362.

### BERTRAM et al. v. LYON.

[1 McAll. 53.] [1]

Circuit Court, D. California. July Term, 1855.[2]

SALE—VALIDITY—LACK OF SUBJECT-MATTER—MISTAKE IN DESCRIPTION—WARRANTY.

1. When the substance of a thing sold, is not in existence at the time of sale, such sale is void.

[See note at end of case.]

2. A mistake without bad faith, made in the description of the brand on flour barrels does not so essentially change the substance of the flour as to render void the sale. Where the sale note described the flour as "Haxall," whereas it was branded "Gallego," the sale was not avoided.

[See note at end of case.]

3. But the description amounted to a warranty, for breach of which, damages, if proved, could be recovered.

[See note at end of case.]

At law. This action is brought by vendor against vendee, to recover the purchase-mon-

[1] [Reported by Cutler McAllister, Esq.]

[2] [Affirmed by the supreme court in Lyon v. Bertram, 20 How. (61 U. S.) 149.]

·ey for two thousand barrels of flour sold. A special verdict has been agreed upon by the parties. [Judgment for plaintiff.]

[Defendants subsequently appealed to the supreme court, which affirmed the judgment in Lyon v. Bertram, 20 How. (61 U. S.) 149.]

The answer of defendant consists of six ·different pleas. The first is the statute of limitations; the sixth is a denial of the allegation in the complaint, which avers an assignment of Flint, Peabody & Co. to the present plaintiffs. These two pleas are disposed of by the special verdict agreed on, and the court is remitted to the issues raised by the four intermediate pleas. All these resolve themselves into a general denial of the allegations of the complaint, setting up a contract ·of sale.

On the argument, it was contended by the counsel for the defendant, that the description in the contract, that the flour sold was "Haxall," when it turned out to be "Gallego," rendered the contract void upon the legal principle, which requires that, to constitute a contract, there should be a grantor, a grantee, and a thing granted. That this case comes within the operation of the rule, that where parties contract in relation to a thing which at the time of the execution of the contract they believed to be in existence, and which it is ascertained had no existence at the time, the whole contract is void, inasmuch as the consent of the parties had never met on the subject-matter of the ·contract, it not having been in existence.

John K. Hackett, for plaintiffs.
Saunders & Hepburn, for defendant.

McALLISTER, Circuit Judge. In this ·case, it appears by the facts patent on the face of the agreed verdict, that the assignors of plaintiffs were owners of a cargo of flour, consisting of two thousand barrels, branded as "Gallego," "being at the time on board the ship 'Ork,' lying in this harbor, composing the entire cargo of said ship, and inspecting superfine 1771; bad, 229 barrels." That as such owners, they entered into a written contract with defendant, by which they sold to him "the cargo of Haxall flour now on board the ship lying in the harbor (of San Francisco), being about two thousand barrels," on the terms mentioned in the contract. Among those terms was, that one price was to be paid for "superfine," another for bad flour.

* It is contended by defendant, that the brand of the flour being described in the contract as "Haxall," whereas, in fact, it was branded "Gallego," the whole contract was void. To sustain this position, a decision from the supreme court of this state has been ·cited.

In the case of Flint v. Lyon, 4 Cal. 17, that court say, in reference to this very contract, "How, then, stands the case? The ·contract was founded in mistake; both par-

ties supposing they were contracting concerning a certain article which had no existence, consequently the contract was void for want of substance of the thing contracted for." If the flour sold had no existence at· the time of the contract, it is certainly true that no contract could have been made in relation to that the substance of which was not. It would come within the operation of the elementary principles of law, that in order to constitute a valid contract, there must not only be parties capable of contracting, but a thing in existence, the subject-matter of the contract in regard to which there had been an "aggregatio mentium." This rule is practically illustrated in Leach v. Mullett, 14 E. C. L. 233, where, by mistake, a house was sold at auction and so described that it did not refer to the house the parties intended to buy and sell, but to another house not in the contemplation of either party. Here was a clear mistake as to the substance of the thing intended to be sold. There are various cases where the article contracted for is of a different species from that treated for. Thus, where an article was sold as "indigo," which was not indigo, but a fraudulent compound made to resemble it; or where a stone was sold as a "Bezar" stone, when in fact it was not such a stone; and various other cases. But in all such, the contract has been deemed void, in the absence of fraud, in a court of common law, by reason of the want of a subject-matter. It has been, where the substance of the thing was not in esse at the time of the contract, or the description so materially wrong, that the substance of the thing must be essentially changed in order to answer the description in the contract.

Does this case come within the foregoing rule? The special verdict finds the subject-matter of the contract to have been "a cargo of flour at the time on board the ship 'Ork,' lying in the harbor of San Francisco, being about two thousand barrels." In the contract, the flour is represented to be "Haxall," whereas it was branded "Gallego" flour; and the question is, did these two thousand barrels of flour, the cargo of the ship "Ork," cease to exist in substance, or, to use the language of the authorities, to have "a potential existence," because the brand upon them was different from that described in the contract? In other words, was this description of the brand a representation or warranty? or, was the brand so essential an element of the flour, that the latter ceased to exist in substance when the former was erroneously described so as to be made incapable of being the subject-matter of a contract? In cases in which executed contracts, such as the one in controversy, have come under consideration, where there had been through mere misapprehension a wrong description of the article sold, the question ⱨrose, whether the description amounted or not to a warranty. Thus, in Shepherd v. Kain, 7 E. C. L. 82,

where a ship was described as a "copper-fastened vessel," it appeared, in fact, that she was only partially copper-fastened. The court say, "Here the ship was not a copper-fastened ship at all." Still, so far from considering that the ship ceased to exist, and the contract void for that reason, the court upheld it as a contract with warranty; consequently, in an action for breach of warranty. damages were assessed against the defendant.

In Seixas v. Woods, 2 Caines, 48, an action was brought for selling peachum-wood represented to be brazilette, the former worth hardly anything, the latter of considerable value. Peachum-wood and brazilette-wood constituted the same substance, although different in name and value. Still, the negotiation in relation to it was not treated as a void contract. The only question was, whether there being no express warranty, the law would annex to the contract, under the circumstances, an implied one.

Further references to authorities are unnecessary; but if they are needed, it is only necessary to refer to the decision of the supreme court of this state which has been relied on by defendant. It is true, as stated, that the court in that case declared the contract in this, "to be void for want of the substance of the thing contracted for," ([Flint v. Lyon,] 4 Cal. 21,) but in the same opinion they take a different view of the sale-note, and recognized it as a contract containing a warranty. They declare, that the use of the word "Haxall" in the sale or note amounted to a warranty that the flour was "Haxall." Now, it is impossible to come to a conclusion in this case that there was a warranty, and at same time consider that there was no contract. Id. 20. If the contract was void for one purpose, it was for all; and if null as to one party, was so as to both. The warranty was created by the contract. The latter is the principal, the warranty the incident. If the one had no vitality, the other could have had no existence. The fair inference, then, is,—whatever comments were made by the supreme court of this state in the case cited, upon the character of this contract,—the court recognized a legal contract which, by its terms, fixed upon one party the obligations and conferred upon the other the rights arising out of a warranty of the article sold. So far as the contract is recognized as a subsisting one by the supreme court of this state, this court is prepared to go.

It is a contract which by its terms passed a title to the property to the defendant; and whether the description inserted in the sale-note amounted to a warranty; and. if it does, whether the only remedy for any loss which may have accrued to defendant (if any such has accrued), is to be found in an action for breach of warranty,—are questions it is unnecessary to decide in this case.

The complainants predicate the cause of action upon the allegation of a sale of a certain cargo of flour, and allege the assumpsit of the defendant to arise out of such sale. The question submitted by the special verdict is, whether upon the whole matter found, the defendant did promise and undertake as alleged.

Now, with the views entertained by the court, the allegations in the complaint are sustained by the proofs. The insertion by mistake of the word "Haxall," did not annul the contract. At the utmost, it amounted to a warranty that the flour should be of that brand. If the pleadings had been so shaped in this case, and the evidence so marshaled, as to have enabled the court to look into the case as one in which a recoupment was asked in the nature of damages for breach of a warranty, the court may have gone into the investigation. But there is no plea stating special damages, nor any evidence stating the amount. Had the pleadings in this case raised the question of the right of defendant to avail of a breach of warranty, the court could have considered it, but the facts as disclosed. in the special verdict give no data by which to assess damages. But if the contract is valid, and assuming the pleadings to be such as would authorize defendant to give evidence of his loss by a breach of warranty. the measure of damages would be the difference in value between "Gallego" flour at the time of sale, and "Haxall" flour as it was represented to be in the sale-note. Now, the statement as to value in the agreed verdict is as follows: "In the opinion of some experts, there existed no difference in the quality or price of flour branded and known as 'Gallego' and 'Haxall,' each inspecting superfine; but in the opinion of other experts, there was a difference, some preferring 'Haxall' and some 'Gallego.'" This evidence certainly would not authorize the assessment of damages in an action for the breach of the warranty, nor prove any damages were the defendant attempting to set them up by way of defense in this action.

What, then, is the aspect of this case? The written document relied on by the plaintiffs, the court considers to be a contract. It is an entire and executed one. It transferred the cargo of the ship "Ork," which by its very terms is sold to defendant, who, in his note of 25th January, 1853, in which he directs a delivery of fifty barrels, writes of the latter as being "out of the lot purchased from ship 'Ork;'" and the contract speaks of the delivery, and stipulates, that at the expiration of a certain number of days, if the cargo be not previously delivered, the defendant may land all that remains, should he so elect; provided he pays the storage and drayage expenses. The title to the flour became vested. and he has already received a part of it.

Whether the defendant had a right, on discovering as he did, after the second delivery order, that the flour was "Gallego," to rescind the contract, has not been argued,

and cannot legitimately arise in this case, as at that time having received and appropriated a portion of the flour, he was not in a position to place the adverse party in statu quo in the event of a rescission of the contract.

A judgment must be entered for the plaintiffs.

If the court has erred in foregoing views, the amount involved will fortunately enable the defendant to have any such error corrected by a higher tribunal.

[NOTE. This judgment was affirmed on writ of error by the supreme court in Lyon v. Bertram, 20 How. (61 U. S.) 150. Mr. Justice Campbell, in delivering the opinion, said: "It is evident, from the verdict, that the error in the description of the cargo did not bear on the substance, or on any substantial quality of the subject of the sale. The subject of the sale was a cargo of flour, of about 2,000 barrels, on board of a vessel lying at a wharf in the city, of a quality to be ascertained by an inspection; and from that inspection, and not from the brand, the price was to be ascertained. * * * The case clearly does not belong to that class in which the subject-matter of the contract was of a nature wholly different from that concerning which the parties to the contract made their engagements. The brand on the exterior of the barrels of flour was certainly not of the substance of the contract. * * * The defendant does not resist the fulfillment of his agreement for any fraud; nor does the verdict impute any mala fides to the plaintiffs. * * * It may be admitted that the description of the flour as 'Haxall' imported a warranty that it was manufactured at mills which used that brand, and that the purchaser would have been entitled to recover the amount of difference in the value of that and an inferior brand, * * * but it cannot be admitted that the purchaser was entitled to abandon this contract."]