## CONNELLY *v.* PECK *et al.*

The transfer of a bond for title to land upon a promise by the assignee to pay a certain debt of the assignor, binds the assignee to perform the trust, and the obligation to pay the debt is not affected by any misrepresentations made by the assignor to the assignee, because the rights of the creditor under the transfer had already vested.

Nor is the obligation of the assignee affected by the fact that the land was partnership property of the assignor and assignee, where it was not so held out to the world, and where the partnership was unknown to the creditor.

And where the assignee was a commercial firm, and the assignment was made to an agent acting as the trustee of the firm, and the agent obtained from the obligor in the bond a deed for the land to the members of the firm, and subsequently the firm sold the land to their successors in business, constituting a new firm, of which some of the old firm were members, *Held* that the purchasers are chargeable with notice of the trust.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This cause was before the Supreme Court in 1853, when the decree entered in the Court below was reversed, and it was ordered that the plaintiff be allowed to amend his bill, or file a supplemental bill, on the ground that he was entitled to relief upon his proofs, although they did not sustain the allegations of the bill. The case is fully reported in 3 Cal., 75.

The plaintiff thereupon filed a supplemental bill in the Court below, averring that the defendants, Sylvester F. Peck and A. B. Reading, were partners in business in Vicksburg, Miss,, under the firm name of Reading & Peck; and that the defendants Robert McDowell and John A. Peck, were partners in New Orleans, under the firm name of McDowell & Peck; that the two firms engaged in a joint adventure of shipping houses and lumber to California, and that S. F. Peck came to California in 1850 and took charge of the houses and lumber so shipped as the ostensible owner; that in August, 1850, he obtained in his own name from C. M. Weber a bond for a deed for a lot of land in Stockton, under which he went into possession, and proceeded to erect a building thereon, under the superintendence of the defendant John McNish, out of some of the lumber so shipped. That the plaintiff recovered a judgment, as alleged in the original complaint, against S. F. Peck for money loaned by plaintiff on account of the said joint adventure, which ostensibly belonged to S. F. Peck alone, the interest of John A. Peck, of Reading, and of R. McDowell being unknown to plaintiff until after the filing of the original complaint in this action; that neither McDowell & Peck, nor McDowell, Mills & Co., (the successors of McDowell & Peck,) paid any new consideration for or on account of the conveyance to them of the legal title to the land—the sole pretended consideration being an alleged balance due by S. F. Peck to McDowell & Peck, on account of the joint adventure, and the succession of McDowell, Mills & Co. to the firm of McDowell & Peck. [This conveyance, as alleged in the original complaint, was made by Weber, after payment of the whole purchase money, to McDowell & Peck, and by them transferred to McDowell, Mills & Co.] That on December 11th, 1850, S. F. Peck assigned the bond of Weber to the defendant John McNish, as trustee of McDowell & Peck, in trust, to pay out of the property assigned, first, the mechanics' liens, and second, the plaintiff the amount due for money loaned, the residue to be paid to McDowell & Peck; which McNish promised to do; that at the time of the execution of the deed from Weber to McDowell & Peck, and of their deed to McDowell, Mills & Co., there had been no dissolution of the special partnership as to said adventure, nor any settlement of accounts between them. [The deed from Weber to McDowell & Peck, was made after the assignment of S. F. Peck to McNish, and was procured by McNish, as charged in the original bill, and as appears from the evidence.] The supplemental bill prays that the property may be decreed to be subject to the trust, and be sold, and the proceeds applied to the payment of plaintiff's claim. The original bill avers that the plaintiff had obtained a judgment against

23

S. F. Peck for the amount due him, under which the lot had been sold in execution and bought by the plaintiff, the levy being prior to the recording the deeds of Weber to McDowell & Peck, and of McDowell & Peck to McDowell, Mills & Co. The defendants demurred to the amended bill. The demurrer was overruled; whereupon it was stipulated between the parties that the original answers of the defendants stand as the answers to the supplemental bill, and the case be submitted on the evidence offered at the former trial. The defence is in substance, that the land was bought with the partnership funds of McDowell & Peck, and was partnership property, and that McDowell & Peck paid the whole amount thereof, through McNish, directly to Weber, and obtained the deed of the lot in their own name; that McDowell & Peck conveyed the same through McNish, their agent, to McDowell, Mills & Co., for a valuable consideration; and that Reading & Peck are largely indebted to McDowell, Mills & Co. on account of the joint adventure, and that the lot is insufficient to pay the same.

The evidence offered, which will be found fully set forth in the former report of this case, shows that McNish took the assignment from S. F. Peck in 1850, at which time, as S. F. Peck deposes, the instalments of the purchase money then due, had been paid by S. F. Peck; that McNish promised S. F. Peck to pay, first, the mechanics for building on the lot, and secondly, to pay the plaintiff for money borrowed of him for the use of the company and other purposes specified, the balance to go to McDowell & Peck. McNish testifies that the promise was obtained from him under a misreprepresentation made by S. F. Peck, by which McNish was induced to believe that the plaintiff had a judgment against each of the parties in the concern. McNish also deposes that he paid the whole amount of the purchase money to Weber from the funds of McDowell & Peck in his hands. It was also proved that the deed of Weber to McDowell & Peck, and their deed to McDowell, Mills & Co., were both executed before, but not delivered till after, the levy on the lot under plaintiff's judgment, under which plaintiff bought.

The cause was tried before the Court—a jury being waived. The finding of the Court is that the promise of McNish was obtained by misrepresentations of S. F. Peck. That the transfer from S. F. Peck to McNish, as well as the deeds from Weber to McDowell & Peck, and from them to McDowell, Mills & Co.; were made prior to the levy under plaintiff's judgment, under which plaintiff bought the lot; and that McDowell, Mills & Co. are the successors of McDowell & Peck; and the conclusion of the Court upon the finding is, that S. F. Peck had no interest, legal or equitable, in the lot at the time of the levy of the plaintiff's judgment, and that the other defendants, McDowell, Mills & Co., prior to the levy, and prior to any lien of the plaintiff under his judgment, had acquired the whole legal and equitable title to the land, and that the plaintiff acquired no right or title thereto under the sheriff's deed, whereupon the Court entered a decree for the defendants. Plaintiff appealed.

*E. W. F. Sloan* for Appellant.

S. F. Peck went into possession of the lot of land under a written contract of bargain and sale, and the purchase money had all been paid anterior to the recovery of the judgment in February, 1851. The legal title was still in Weber, but nothing more. He stood seized to the use of S. F. Peck.

"All real estate not exempted by law, whereof the defendant or any person for his use, was seized on the day of the rendition of the judgment, or at any time thereafter," is made the subject of seizure and sale under execution. Laws of 1850, p. 444, § 184. See Jackson *ex dem.* Stone *v.* Scott, 18 J. R., 94; Jackson *ex dem.* —— *v.* Tuttle, 9 Cow., 233.

2. Whether the recording of the judgment in San Joaquin county created a lien on the lot or not, certainly the levy of the execution on the 15th of September, 1851, created a lien which no subsequent conveyance could overreach, though made to a *bona fide* purchaser for a valuable consideration.

The contract of sale was made alone to S. F. Peck, who alone took possession. McNish was placed in charge as his agent, and there has been no change of possession since.

R. McDowell, J. A. Peck, and A. B. Reading may have been partners in the business, and as such jointly interested, but they were *dormant partners.* S. F. Peck was the sole ostensible owner, not only of the lot and building erected thereon, but of the lumber sold to Weber in payment for the lot.

We admit the principle that the partnership fund is to be applied to partnership debts, before a demand against one member only can be enforced against it. But it is applicable only to cases of open public partnerships. The rule which governs a case like this is ably discussed and clearly laid down in Lord *v.* Baldwin, 6 Pick., 350; French *v.* Chase, 6 Greenleaf, 166; and Cammack *v.* Johnson, 1 Green. Chy. R., 159.

I submit that the appellant is entitled to a decree vesting in him the legal title, and placing him in possession of the lot; and for damages, upon an account of the rents and profits of the property since the date of his purchase at sheriff's sale. Or that he is entitled to the execution of the trust imposed upon McNish by the assignment of the property, in pursuance to the declaration of trust made in writing by said McNish, and delivered to the appellant. That McNish be either compelled to execute the trust so charged upon the property—or that the Court appoint a commissioner or trustee, with full power to execute the trust in the room and stead of McNish. A Court of equity will not permit a trust to fail for want of a trustee, and will remove a trustee who abuses the trust or refuses to execute it, and appoint another. The inability of the trustee to repudiate the trust on the ground that he had supposed the judgment of the appellant had been recovered against the whole firm, but afterwards found that it had been in fact recovered against S. F. Peck only, was fully discussed upon the former appeal.

*D. W. Perley* for Respondent.

1. The finding of the Court contradicts every material fact in both original and amended complaint, and there is no statement of the evidence which this Court can receive so as to show the finding incorrect, and it must therefore be taken to be true, and if true, the judgment is correct, and ought to be affirmed.

2. If the Court does review the evidence in the former record, it will be found fully to sustain the finding and judgment of the Court.

3. The appellant acquired no shadow of right or title to the land under the purchase at sheriff's sale. He purchased only the right of S. F. Peck. Peck never had *any* right, except a bond for title on paying the purchase money. He never did pay the purchase money, and he assigned and transferred this bond, and gave up possession of the lot to McDowell & Peck, before ever Connelly's judgment was obtained against him. He then had nothing which could be sold, and the purchaser acquired no title under the sale.

4. McDowell & Peck not only took the assignment of this title bond, but they paid to Weber *afterwards* the whole amount of the purchase money, and took a deed in fee simple to themselves for the property before ever the judgment of Connelly v. S. F. Peck was obtained; and this title was afterwards conveyed by deed from them to third parties, to wit : McDowell, Mills & Co., who are now the legal owners thereof.

5. McDowell, Mills & Co., the owners of this property, cannot be justly divested of their rights in it by any judgment against S. F. Peck, for that firm never had any connection whatever with him, even in the limited venture of lumber and houses to California, and they are not in any way directly or indirectly responsible for his debts.

6. McDowell, Mills & Co. are *bona fide* purchasers of this property for a valuable consideration, without notice of any equitable lien on it, in behalf of said appellant, and the county records at the time they purchased showed no encumbrance of that character.

7. It will not avail appellant to say that John McNish, the agent of McDowell & Peck, knew of the judgment of Connelly, and promised to pay it. If this be true, such promise could not be enforced against McDowell, Mills & Co., who are third parties, and strangers to any such promise. But the decisive answer to this is, that the Court finds as a fact, and the evidence sustains the finding, that the promise was made by said McNish to S. F. Peck, under a mistake of material facts, made through the misrepresentations of said Peck. This, in equity, avoids the whole promise, as it was procured by fraud.

8. There is no proof whatever that the money borrowed by S. F. Peck from Connelly, on which the judgment was obtained, was ever used in the business connected with the venture of lumber. He did not buy the land with it, and the houses and lumber were already paid for. How, then, did he use it, except in his own private business?

9. S. F. Peck had no power to borrow this money on account of McDowell & Peck. The joint venture gave him no such powers, and

he did not pretend to borrow it on their credit. He gave his own individual note, and the judgment was against him alone.

10. If it could be held by the Court that McDowell & Peck could in any way be held responsible· for this judgment of Connolly against S. F. Peck, it does not follow that McDowell, Mills & Co. could be so held liable, or that their property could be taken to pay it. They are an entirely different firm, with the exception of John A. Peck; they have different rights and interests, and, as a *firm*, they had no connection with the joint venture of lumber, and it appears to be a singular proceeding to take the property of McDowell, Mills & Co. to pay a judgment against S. F. Peck, to which they are entire strangers.

11. The whole evidence of Sylvester F. Peck must be rejected, on the ground of his incompetency, being an interested partner. When the cause was first tried, the objection only went to his credibility, but at the time of the last trial, and when the deposition was used, the statute had been so amended as to exclude the evidence altogether. His interest is manifest, for if by his oath the property of McDowell & Mills can be charged with a trust to the extent of the judgment against him, he thereby pays the judgment, and his oath puts so much money into his pocket.

The opinion of the Court was delivered by Mr. Justice HEYDEN-FELDT. Mr. Chief Justice MURRAY concurred.

When this case was here before, we held that the complainant was entitled to relief upon the proofs, if the allegations and prayer of the bill of complaint had corresponded with the facts proved, and the case was sent back to give the complainant an opportunity to amend. The case now comes up, upon the bill and answer, and amended bill and answer, with the proofs as taken in the former case. The amended bill now contains allegations and a prayer for relief, upon which a Court of chancery can act, and I see no reason to change the opinion formed when the case was first here.

The transfer of Weber's bond for title by S. F. Peck to McNish, upon the trust to pay the debt of complainant, and the promise of McNish to perform the trust, was binding on the latter, and could not be affected by any misrepresentation made by Peck, because the rights of Connolly under the transfer had already vested. Before the transfer, the property was in the name and power of Peck. He might have directly transferred to Connelly, or any one else, and it would have been just as effectual; and thus having the power to make a valid transfer, he equally had the power to create the trust, or impose any terms he saw fit.

This position is not at all affected by the consideration that the property in question was partnership property. There is nothing to show positively that it ever was so held out to the world, or so regarded by the complainant, and so far as concerns S. F. Peck's dealings with it, and with the plaintiff, his partnership was unknown, and his partners dormant; in which case equity gives no priority to partnership debts. See Lord v. Baldwin, 6 Pick., 350; Cammack v. Johnson, 1 Green Ch. R., 169.

McDowell, Mills & Co. cannot be regarded as purchasers without notice.    McNish the trustee, was the agent of McDowell & Peck, who are thereby chargeable with notice, and McDowell, Mills & Co. are the successors of McDowell & Peck, one if not both of the latter firm belonging to the former.

The decree of the chancellor is reversed, and a decree here ordered directing the Court below to appoint a master to sell the property, and make a report of the sale, and out of the proceeds to pay the judgment, interest, and costs of the complainant against S. F. Peck, and then to pay the surplus to McDowell, Mills & Co.