JOHN S. BRITTAIN DRY GOODS CO., RESPONDENT, *v.*
ADOLPH BIRKENFELD, ASSIGNEE, APPELLANT.

[Submitted Nov. 23, 1897.  Decided Dec. 6, 1897.]

*Sale—Modification of Contract.*

WHERE the terms of a contract for the sale and purchase of goods has been agreed upon, they cannot be modified without the consent of both parties; and such consent is not shown by the acceptance of the goods by the vendee under an invoice changing the terms of the contract from a sale to a consignment.

*Appeal from District Court, Lewis and Clarke county. Henry N. Blake, Judge.*

REPLEVIN by John S. Brittain Dry Goods Company against

Adolph Birkenfeld, assignee.   From a judgment for plaintiff, and an order denying a new trial, defendant appeals.   Reversed.

Statement of the case by the justice delivering the opinion.

This was an action instituted in the District Court of the First Judicial District in and for the county of Lewis and Clarke, by the John S. Brittain Dry Goods Company, a corporation of Missouri, against Adolph Birkenfeld, the assignee of Genzberger, Barnett & Co., a co-partnership which had been engaged in business at Helena, Montana. The complaint alleges that certain dry goods had been delivered by p aintiff to the firm of Genzberger, Barnett & Co. by reason of the latter's misrepresentation as to its financial status.   It also alleges that these goods had not been sold to said firm. but had been held simply on consignment.   The record, among other matters, discloses the following facts :

On May 27, 1895, a traveling salesman in the employ of plaintiff called upon Genzberger, Barnett & Co.   His account of what occurred is as follows :   ' 'My duties were to sell their product [that is the product of the plaintiff] to the retail trade in the Western countries by soliciting and sending to the house orders for their approval and filling.   The plaintiff was engaged at that time in the wholesale dry goods business. It shipped goods to states other than the one in which it resided.   I called on Genzberger, Barnett & Co. some time in June.   Brought Mr. Barnett over to my sample room, showed my sample of dry goods, and priced him the goods, upon which he showed satisfaction.   He left my sample room, walked over to his place of business, and brought Mr. Genzberger over.   Showed Mr. Genzberger some of my merchandise.   Told him the prices, and, after a short consultation between Mr. Genzberger and Mr. Barnett, Mr. Barnett left the sample room for his place of business, leaving Mr. Genzberger there, who at once made a selection of such goods as he wanted, for which I took their order.   Left them a copy thereof, sending the original to the place of business of the

plaintiff.   These goods were sold upon a basis of August and September, shipment optional with plaintiff, with a November first dating; the invoices to be dated on November 1st, from which time our regular terms were to be given."

There were four of the orders referred to in the testimony of the witness last mentioned, substantially the same in tenor.

The language of one sufficiently indicates the character of all.   It is as follows: ''Date and number your orders. Mail them on the first train.   Order No. 102.   Date taken, May 27th.   John S. Brittain Dry Goods Co.:   Ship Genzberger, Barnett & Co., of Helena, state of Montana.   How ship, B. & M.   When, Aug. 15.   Dating, if any, Nov. 1. Salesman, Wagner.''

Appended to each order was a list of certain dry goods.

Genzberger, a member of the former firm of Genzberger, Barnett & Co., testified in behalf of the defendant as follows : ''I had some business dealings with the plaintiff in the year 1895.   Bought some goods from them.   I know the circumstances of the purchase of those goods.   I remember of the traveling salesman being out here.   I gave him the order for the goods.   (Witness handed paper.)   Those are the order blanks—the copy of the order he gave me.   I saw nothing on those orders saying that these goods were sold on consignment.   Nothing was said to me when this order was taken regarding any such state of affairs as that.   My attention was first called to it after the assignment.   The contract that I made with the salesman representing the plaintiff corporation regarding the purchase of those goods was that part of the goods were to be dated November 1st and part October 1st, and the goods should be shipped, I think, in August or September, I am not sure which.   *   *   *   The terms of sale in those orders of sixty and ninety days are the ordinary customary terms of sale.   *   *   *   The only contract was on the terms of the goods as mentioned here in this order ; there was nothing said about any other contract.''

The testimony of Barnett, the other member of the firm, was substantially the same as that of Genzberger.

Upon receipt of the orders aforesaid, the plaintiff shipped the goods mentioned therein to the firm of Genzberger, Barnett & Co. Preceding the shipment were bills or invoices of the merchandise. Upon these billheads or invoices there was certain printed matter, namely :

"St. Joseph, Mo., Aug. 12, 1895. Genzberger, Barnett & Co., Helena, Montana: Bought of Jno. S. Brittain Dry Goods Co., importers and jobbers of dry goods, notions, and furnishing goods. Also selling agents for Wood Manuf'g Co.'s shirts, pants, and overalls. Nov. 1st. Terms : Net, 90 days; 60 days, less 4 per cent.; 30 days, less 5 per cent.; 10 days, less 6 per cent. Payable in cash or exchange. Keep fully insured. All bills become due when parties suspend payment, assign, or sell out. All goods dated ahead are merely consigned and subject to replevin until said dating has expired. Retention of goods will be considered acceptance of all the terms hereon. Interest charged at the legal rate per annum after maturity. When goods are sent as ordered, you must not return them without our consent. We will make no credits or reclamations of any nature, unless reported to us within five days after receipt of goods."

Shortly after the receipt of the goods and invoices aforesaid, on August 27, 1895, the firm of Genzberger, Barnett & Co. made an assignment for the benefit of its creditors to Adolph Birkenfeld, the defendant herein. The assignee took possession of all the goods belonging to the firm, and also of the merchandise in dispute in this action.

The witness Genzberger denied that he had ever noticed this printed matter on the invoices prior to the assignment. His partner, Barnett, however, concedes that he was aware of it.

The answer of the defendant put in issue the allegations of the complaint. There was a jury trial. Upon the close of plaintiff's case a motion for a nonsuit was made, which the court overruled.

The court instructed the jury as follows : "If you are satisfied by a preponderance of the evidence that the plaintiff sold the goods to Genzberger, Barnett & Co. to be dated as a

sale of October 1st and November 1st, and shipped and de-
livered said goods to said Genzberger, Barnett & Co. upon
the condition that until the time mentioned in the billheads,—
that is, October 1st in one billhead, and November 1st in the
others,—but the goods were only received by Genzberger,
Barnett & Co. and held on consignment by them, and would
be subject to replevin, and that the receipt and retention of
said goods would be considered an acceptance of all the terms
contained on such billheads, and if Genzberger, Barnett & Co.
received said billheads with such statements thereon, and did
not make any objections thereto, but kept and retained the
goods, they thereby consented to and accepted the terms and
conditions contained on said billheads, and the same became a
part of the contract relating to the purchase and delivery of
the goods. When goods are shipped and received on con-
signment, the title to the property remains in the consignor—
that is, the person who ships them—until such time as, by the
terms of the contract, the title is to vest in the consignee, the
person who receives them.''

The court refused to instruct the jury that upon the facts
before it, as a matter of law, the goods had been sold to
Genzberger, Barnett & Co. by plaintiff, and not consigned.

The jury returned a general verdict in favor of the plaint-
iff, and also answers to special questions submitted by the
court. The special findings acquitted Genzberger, Barnett &
Co. of any misrepresentations as to their financial status, but
were to the effect that at the time of their assignment they
held the goods simply as consignees.

The appeal is from the judgment and an order overruling a
motion for a new trial.

*H. G. & S. H. McIntire*, for Appellant.

The contract was contained only in the original order.
There is no proof that this sale was made conditioned upon
the approval by, or right to change reserved in the principal
house at St. Joseph. The traveling salesman was the agent
of his principal with full authority to dictate terms and make

the contract, so far as the purchasers knew. His contract was binding upon the principal. To hold that the house in St. Joseph had the right to inject new terms into the contract is in effect to hold that one party alone can make a valid contract. (*Sturm* v. *Baker*, 150 U. S. 312; *Summers* v. *Hibbard*, 38 N. E. 899; *Milhiser* v. *Erdman*, 9 S. E. Rep. 582; *Hubbell* v. *Palmer*, 43 N. W. Rep. 442; *Aultman* v. *Silba*, 55 Id. 711; *Stacy* v. *Kemp*, 97 Mass. 166; *Fletcher* v. *Willard*, 14 Pick. 464; *Hildreth* v. *O'Brien*, 10 Allen, 104; *Bostwick* v. *B. & O. R. Co.*, 45 N. Y. 712; *Gillaume* v. *Transp. Co.*, 100 Id. 491; *Hazard* v. *Loring*, 10 Cush. 267.) As a custom of merchants a clause similar to the printed matter in the billhead under consideration has been held unreasonable and invalid. (*Haskins* v. *Warren*, 115 Mass. 514; citing also *Van Winkle* v. *Crowell*, 146 U. S. 42.)

*Walsh & Newman*, for Respondent.

That a party who is induced to enter into a contract by false statements may rescind it is well settled. (*Farewell* v. *Boyce*, 17 Montana, 83; *Klopenstein* v. *Mulcahey*, 4 Nev. 301; *Whittaker* v. *Bank*, 59 N. W., 395, (Mich.); *Siberman* v. *Munroe*, 62 N. W., 555, (Mich.); *Reed* v. *Coudury*, 44 N. W., 351, (Ia.); *Schram* v. *Strouse*, 28 S. W., 262, (Tex.); *Lowden* v. *Fisk*, 27 S. W., 180, (Tex.); *Bank* v. *Bamberger*, 13 S. W., 959, (Tex.); *Newell* v. *Randall*, 19 N. W., 972, (Minn.); *Work* v. *Jacobs*, 53 N. W., 993, (Neb.); *Syms* v. *Bonner*, 48 N. W., 473, (Neb.); *Tootle* v. *Bank*, 52 N. W., 396, (Neb.); *Krauss* v. *Thompson*, 14 N. W., 266, (Minn.); *Oswego S. F.* v. *Lindrum*, 10 N. W., 900, (Ia.); *Doane* v. *Lockwood*, 4 N. E., 500, (Ill.) Many more authorities might be cited on this proposition. As to when a contract may be rescinded under our code see Sections 2110, 2111, 2117-2122, 2271, 4440 and 4442. Actual fraud may consist of different acts. One act constituting actual fraud is: "The positive assertion, in a manner not warranted by the information, of the person making it, of that which is not true, although he

believes it to be true." (Third Subdivision, Section 2117, Civil Code.)

Buck, J.—Upon the undisputed facts before it, was the trial court justified in submitting to the jury the question of whether or not plaintiff had sold the goods in dispute outright to the firm of Genzberger, Barnett & Co. or had consigned them only? We think not. It was the duty of the court to have decided, as a matter of law, whether the goods aforesaid had been sold or consigned. There is nothing in the evidence offered by the plaintiff to show that its traveling salesman had ever had any other agreement with Genzberger, Barnett & Co. save one for a direct sale of the goods. From the testimony of said traveling salesman himself, it cannot in any manner be inferred that the goods ordered through him by the above firm were to be received on consignment. The testimony of Genzberger and Barnett as to the terms of the sale agreed upon between this firm and the traveling salesman of the plaintiff is undisputed. No question is raised as to the authority of the salesman to bind the plaintiff.

If, then, a contract was entered into between the plaintiff and the firm of Genzberger, Barnett & Co. on May 27, 1895, can it be reasonably contended that its terms were subsequently modified by reason of the facts that invoices containing the printed language which appears in the statement were sent and received, and Genzberger, Barnett & Co. retained the goods without objection? We are of the opinion that it cannot be inferred from said facts that there was any modification of the original contract entered into. If, when plaintiff received the orders from its traveling salesman, it had seen fit to make the firm of Genzberger, Barnett & Co. agree to the terms as printed on its invoices, it should have done so before shipping the goods. But, having shipped them under one contract, it had no right, on its own motion, to modify the terms thereof. So far as Genzberger, Barnett & Co. are concerned, their original contract was being complied with when plaintiff shipped the goods. It is an elementary principle that the minds of parties contracting must meet before a

contract results.   The evidence is not sufficient to show that Genzberger, Barnett & Co. agreed to the terms the plaintiff had printed on its billheads or invoices.

Respondent recites the case of *Newell* v. *Whitwell*, 16 Montana 243, 40 Pac. 866, as upholding its contention that the original contract between plaintiff and Genzberger, Barnett & Co. had been modified. But there is a clear distinction between said case and the one at bar.   In the *Newell* v. *Whitwell* case the invoices were in evidence for the purpose of ascertaining the character of a contract of sale, and in the present case they are relied upon to show a modification of a contract of sale the terms of which are conceded.

The order of the court is that the judgment be reversed, and the cause remanded, with directions to the lower court to enter judgment in favor of appellant.

*Reversed and Remanded.*

HUNT, J., concurs.

