[Civ. No. 4162. First Appellate District, Division One.—January 10, 1922.]

## THE NEWHALL LAND AND FARMING COMPANY (a Corporation), Respondent, v. THE HOGUE-KELLOGG COMPANY (a Corporation), Appellant.

[1] Sales—Breach of Warranty—Type or Variety of Lima Bean Seed—Measure of Damages.—In an action for breach of a warranty as to the type or variety of lima bean seed, where the breach was discovered following the sowing and before the harvesting, it was proper to adopt as the measure of damages the difference in value of the crop actually produced and that which would, according to the evidence, in all probability have been produced had the warranty been complied with.

[2] Id.—Applicability of Code Provisions.—In such an action, such measure of damages is justified by either sections 3300 or 3313 of the Civil Code, since such enactments are in affirmance of the common-law rules and are to be interpreted in accordance therewith.

[3] Id.—Article of Particular Type—Order by Name—Warranty.—Where an article of a particular variety or type is ordered by name and the seller purports to furnish the same, with or without any express statement that the article furnished is of the kind ordered, a warranty of the identity of the variety or kind arises

[4] Id.—Warranty of Quality of Seed—Consummated Sale—Subsequent Disclaimer of Warranty—Effect of.—Where a sale of lima bean seed warranted to be of a certain variety had been consummated, the subsequent receipt by the agent of the vendee of a letter from the vendor upon which was printed in small type a disclaimer of warranty was not sufficient to modify the terms of sale, and the vendor could not thereby impose upon the vendee the duty of returning the seed unless he consented to the modification.

---

1. Warranties and conditions upon sale of seeds, nursery stock, etc., note, 16 **A. L. R.** 859.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Louis C. Drapeau and George E. Farrand for Appellant.

I. W. Stewart and Arvin B. Shaw, Jr., for Respondent.

KERRIGAN, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff for the sum of $9,171.18, awarded to it as assignee of Steve Costamagna and B. Aragno for damages for the breach of a warranty as to type or variety of two lots of lima bean seed, aggregating 5,600 pounds, purchased by said Aragno and Costamagna from the defendant and planted upon their lands.

The facts of the case pertinent to the questions to be considered are summed up in the respondent's brief and are substantially as follows: Early in April, 1919, Arthur S. Chesebrough, plaintiff's ranch manager at the Newhall ranch, which is situated in Ventura and Los Angeles Counties, between Saugus and Camulos, called upon Mr. Kellogg, vice-president of the defendant company, at defendant's warehouse in Ventura, and on behalf of two tenants of the plaintiff company—the above-mentioned Aragno and Costamagna—discussed with Mr. Kellogg the price of seed beans, particularly of two varieties, Henderson bush limas and Wilson's improved bush limas. Prices were given to Mr. Chesebrough and he saw some of the seed. He asked Mr. Kellogg to visit the ranch, and shortly thereafter Mr. Kellogg did so, bringing with him samples of each of the two varieties of beans, and exhibited them to one of said tenants. At that time Mr. Chesebrough, on behalf of both tenants, ordered specific quantities of Wilson's improved seed and Henderson bush seed. The seed was thereafter delivered by freight to the nearest station, Piru, and was planted. A perfect "stand" of plants resulted. About the 1st of July it was observed by the tenants that the vines were beginning to throw out runners, and, as the Wilson improved beans are of the bush habit as distinguished from ordinary lima beans, which are vining beans, the matter was at once brought to the attention of Mr. Chesebrough and of the de-

fendant company. Mr. Hogue, president of the defendant, visited the fields and inspected them and came to the conclusion that the plants were ordinary lima bean plants. By agreement of both parties the future cultivation and harvesting of the crop were given over to the management of Mr. Wallace Cummings, an experienced bean-grower, and the cultivation and harvesting were carried on thereafter properly and to his satisfaction. The resulting crop of lima beans was very scanty except in a few spots where, the ground being comparatively flat, irrigation water had stood and the vines produced a considerable number of beans, whereas elsewhere there were few pods on the vines. Such beans as were produced were moldy, split, and broken, and, according to uncontradicted testimony, were on that account defective, off-grade beans.

The trial court found, in accordance with the allegations of the amended complaint, that ordinary lima beans cannot be successfully grown in the territory of which the lands farmed by said tenants form a part, but that Wilson's improved bush lima, requiring less summer atmospheric moisture than ordinary lima beans, can be profitably grown in said territory, which facts were known to the defendant, as also the purpose for which the seed in question was purchased, and that the defendant warranted the seed to be of the variety designated "Wilson's Improved Bush lima bean." It also by its findings negatived defendant's contention that the lands were not properly farmed, or that after the discovery of the error in the description of seed furnished the plaintiff's assignors could have reduced their damages by removing the then growing plants and planting and bringing to maturity a more suitable and successful crop.

In support of its appeal the defendant makes three contentions, the first of which is that the court erred in fixing the measure of damages. Much of the argument of the appellant under this head is devoted to an analysis of the evidence as to the amount and value of the crop that would have been had if the seed supplied had been as ordered, in an effort to demonstrate that the court's findings, both as to quantity of such crop and its market value, were too high. We find, however, that there is ample testimony in the record to sustain the court's conclusion in this regard.

It is also argued by the appellant in this connection that the measure of damages applicable to the case is furnished by section 3313 of the Civil Code; and that under the terms of this section the market value of Wilson's improved bean on the 1st of July, 1919—the date of the discovery of the breach of warranty—should have been used in order to determine the value of the crop which would have been produced had the warranty been complied with, instead of the market value of this variety of bean at or shortly after the time of harvest.

This section reads as follows: "The detriment caused by the breach of a warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at that time."

It will be observed that this section refers to the warranty of the *quality* of personal property; so that if a warranty of type or variety is not a warranty of quality it would not be governed by said section.

The difficulty of applying the terms of this section to a warranty of type or variety was recognized in *Burge* v. *Albany Nurseries, Inc.*, 176 Cal. 313 [168 Pac. 343], and in *Germain Fruit Co.* v. *Armsby Co.*, 153 Cal. 590 [96 Pac. 319], which were cases of warranty of variety of nursery stock, either as to the fruit to be produced or the root upon which the trees were grafted. Obviously, the time to which a warranty refers—nothing appearing to the contrary—is the time of the sale; but since the purchaser in the cases cited had no means of knowing whether the warranty had in fact been complied with until two years had elapsed, during which time expense had been incurred in planting and cultivating the orchard, to have held that the warranty referred to the time of sale, and that the measure of damages was the difference in value at that time between nursery stock of the variety agreed to be furnished and that actually delivered would have led to an unreasonable, if not absurd, result, for the nursery stock delivered might at that time, considered as a commodity, have been of equal, if not superior value to that ordered. The appellate court, therefore, construed this section so as to hold that the time to which a warranty of variety of nursery stock refers is the time

when the breach of warranty is or should be discovered. Applying the warranty as of that time it was found that the orchard produced from the nursery stock, i. e., the land together with the trees planted and growing therein, would, if the warranty had been complied with, have been of a certain value; that with the variety furnished the orchard was of a certain lesser value; and the difference was held to measure the damage suffered as the result of the breach.

[1] But if we attempt to apply this construction to a warranty of the type or variety of seeds the difficulty of fixing the time to which the warranty refers is not escaped unless the discovery of the breach is made before the seed is sown, or, if not then made, remains undiscovered until the harvest. In the case at bar the discovery was admittedly made about the 1st of July following the sowing, at which time, of course, the seed was no longer in existence, and the growing plants produced from the seed were valuable only as a prospective crop of beans. The trial court, in view of this difficulty, adopted as the measure of damages the difference in value of the crop actually produced and that which would, according to the evidence, in all probability have been produced had the warranty been complied with. We think the court adopted a correct construction. It is true that the appellant does not go so' far as to contend that the value of the growing plants on July 1st was the criterion to be adopted, but somewhat illogically contends that the market price of Wilson improved bush lima beans at that date should have been applied to the crop which would not come into existence until a later time. We say "illogically" because it is apparent that if the purchaser of the seed was entitled to a crop to be produced from that seed he could not be limited to a market price prevailing at a time when he could not possibly have been in possession of his crop.

[2] We also think the measure of damages adopted by the trial court can be reached and justified by another course of reasoning. Section 3313 of the Civil Code, in common with several other sections dealing with the measure of damages for breach of warranty and breach of contract, are statutory enactments in affirmance of the common-law rules. Such enactments are to be interpreted in accordance with those rules. (*Baker* v. *Baker*, 13 Cal. 87; *Emeric* v. *Alvarado*, 90 Cal. 444 [27 Pac. 356].) Section 3313 is the

common-law rule for breach of warranty of quality only. (*Hoe* v. *Sanborn*, 36 N. Y. 98.)  It was not applied in the case of warranty of variety of seed, but the measure of damages in such a case was the difference between the value of the crop produced and that which ordinarily would have been produced had the warranty been complied with. (*Passinger* v. *Thorburn*, 34 N. Y. 634 [90 Am. Dec. 753].)  This is the result which would be reached by applying the general measure of damages furnished by section 3300 of the Civil Code, viz., ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom.''  But we think it clear that if such a case is to be brought within section 3313, that section must be given such a construction as to lead to a reasonable result.  Whether the trial court in awarding damages purported ·to follow the provisions of either of these sections, we have no doubt that it arrived at a correct conclusion.

The appellant next contends that the court erred in finding that ordinary lima beans would not grow to success at the Newhall ranch by reason of climatic conditions.

. We think this issue had no great materiality except perhaps as emphasizing the importance of furnishing the variety of seed ordered; but assuming that it had, there was abundant evidence to show not only that the general climatic conditions of the place where this seed was to be sown were unsuited to the growth ·of ordinary lima beans, but that this particular crop was well farmed and produced very poor results.

Appellant's final contention is that the trial court erred in finding that the defendant guaranteed the seed sold to run true to type.

[3]  Where an article of a particular variety or type is ordered by name and the seller purports to furnish the same, with or without any express statement that the article furnished is of the kind ordered, a warranty of the identity of the variety or kind arises. (*Flint* v. *Lyon*, 4 Cal. 17, 21; *Burge* v. *Albany Nurseries, Inc.*, 176 Cal. 313 [168 Pac. 343]; *Firth* v. *Richter*, 49 Cal. App. 545 [196 Pac. 277];

*Rauth.* v. *Southwest Warehouse Co.*, 158 Cal. 54, 60 [109 Pac. 839].) It is urged by the appellant, however, that at the time of the oral negotiations for this seed between the defendant and Mr. Chesebrough, as the agent of the plaintiff's assignors, it was expressly stated that the defendant could not guarantee the seed; and, in addition to this, that there was printed upon stationery of the defendant—and thereby through its correspondence with the plaintiff or its assignors brought to the attention of the latter—a notice to the effect that the defendant "gives no warranty, express or implied, as to description, quality, productiveness or any other matter of any seeds they send out. . . . If the purchaser does not accept the seeds on these terms they are at once to be returned."

As to the oral disclaimer of warranty, the trial court was justified in concluding that anything said by the defendant's representative at the time of the sale in the nature of declining to guarantee the seed referred to its quality (which was admittedly inferior) and not to its variety.

[4] Coming now to the printed disclaimer of warranty upon the stationery of the defendant, and which it is claimed was brought to the notice of the plaintiff's assignors through their agent Chesebrough, the evidence shows that some correspondence took place between the plaintiff corporation and the defendant during the year 1918; and it is defendant's contention that the printed disclaimer of warranty above set forth appeared upon the stationery used in such correspondence. As to this it is sufficient to say that if we regard the evidence as establishing that it was the plaintiff who acted as the agent of Costamagna and Aragno in the purchase of this seed and not Mr. Chesebrough, the ranch manager of the plaintiff, individually, still this correspondence took place before the creation of such agency, so that notice to the Newhall Land and Farming Company at that time, according to the established rule in California, was not notice to the persons who subsequently employed it. (Pomeroy's Equity Jurisprudence, sec. 670; *Connelly* v. *Peck*, 6 Cal. 348; *Stanley* v. *Green*, 12 Cal. 148; *Hunter* v. *Watson*, 12 Cal. 363 [73 Am. Dec. 543]; *Bierce* v. *Red Bluff Co.*, 31 Cal. 161; *Donald* v. *Beals*, 57 Cal. 399; *Watson* v. *Sutro*, 86 Cal. 500 [24 Pac. 172, 25 Pac. 64].) There is one letter, however, written by the defendant to Mr. Chese-

brough, dated April 17, 1919. It related to this transaction; it contained the printed disclaimer, and was received and read by Mr. Chesebrough, including said disclaimer. But this was after the making of the contract of sale of the seeds; and it is held, in accordance with elementary principles, that the terms of a contract duly entered into cannot be changed except with the concurrence of all the parties thereto. (9 Cyc. 264; 13 Corpus Juris, 279; 6 R. C. L. 605; *Dale* v. *See,* 51 N. J. L. 378 [14 Am. St. Rep. 688, 5 L. R. A. 583, 18 Atl. 306]; *Brittain Dry Goods Co.* v. *Birkenfeld,* 20 Mont. 347 [51 Pac. 263]; *Amzi Godden Seed Co.* v. *Smith,* 185 Ala. 296 [64 South. 100].) See, also, *Los Angeles Investment Co.* v. *Home Sav. Bank,* 180 Cal. 601 [5 A. L. R. 1193, 182 Pac. 293].) We think, therefore, that the receipt after the consummation of the sale by the agent of the plaintiff's assignors of a letter upon which was printed in small type a disclaimer of warranty cannot be held sufficient to modify the terms of the contract, and that the vendor could not thereby impose upon the vendee the duty of returning the goods unless he consented to the modification.

In the four cases cited by the appellant in which the disclaimer of warranty was held binding upon the purchaser the record showed facts not present here, such as notice of the disclaimer prior to the sale, or a custom of the seed trade not to warrant pleaded and proven in the case. They are not, therefore, to be considered as authority applicable to the case at bar.

Judgment affirmed.

Tyler, P. J., and Richards, J., concurred.