Rapallo, J.
The court, at Special Term, found that the object and intent of the agreement which the plaintiff seeks *365 to enforce in this action was “ to stifle, embarrass and procure the discontinuance of the criminal proceedings pending against the plaintiff.” On this ground it decided that the agreement was against public policy and void, and this decision was affirmed by the Supreme Court at General Term.
The only evidence upon which the finding was based consists of the written agreement and the testimony of the plaintiff’s counsel as to the negotiation of which that agreement was the result. The plaintiff claims that this evidence is wholly insufficient to sustain the finding, or, in other words, that the finding is unsupported by any evidence.
The feature of the written agreement relied upon on the part of the defendants, as establishing the illegal intent, is the fifth clause, which provides that “ Nickelson, testifying fully as above, the counsel will recommend nol.pros, against Nickelson.”
The preceding part of the agreement referred to provided that ITickelson should testify to all he knew in the bankrupt case, the civil case and the criminal case. The performance of this agreement involved a waiver by ISTickelson of his personal privilege of declining to answer questions, his answers to which might tend to criminate him; and this waiver constituted the consideration for the whole agreement. There was nothing in the written agreement engaging the prosecutor to forbear bringing the indictment to trial against both of the accused, to withhold or suppress any evidence against the plaintiff, nor to interfere with the course of justice in any way. So far as can be gathered from the written agreement the object of the prosecutor was to obtain evidence upon which one, at least, of the accused might be convicted. The disposition of the other was to be left to the discretion of the court and to depend upon the frankness with which he should testify. The prosecutor, who knew the facts as well as the accused, was competent to determine whether or not the testimony of the plaintiff was full and true; and if so, he agreed to intercede with the court for his discharge. On this assurance the plaintiff consented to incur the hazard of *366 a full disclosure. Nothing more can be spelled out of the written agreement. The inference that indirect means or .any others than those expressed in the agreement were to be employed to procure the discharge of the .plaintiff or to stifle or embarrass the prosecution against him, seems to us unwarranted and illegitimate.
The testimony of Mr. Starbuck, who was counsel for the plaintiff and made the agreement in his behalf, adds no force to the defendant’s position. His object, undoubtedly, was — and in this he only performed his duty to his -client—to secure to him by all fair and legal means and with the approval of the court, immunity from his offence, if he had committed one, in consideration of his making full disclosure. The testimony of Mr. Starbuck, giving to it all the effect claimed by the defendants, amounts to nothing more than that, as a condition for agreeing to advise his client to expose himself to the peril of waiving his privilege and testifying to matters by which he might criminate himself, he exacted the promise of his adversary that if, under the advice of him, Starbuck, Nickelson should thus waive his privilege and state the whole truth, the counsel of the prosecutor would unite with him, Starbuck, in a recommendation to the court that a nolle prosequi be entered against Nickelson. It also appears from the testimony of Mr. Starbuck that the plaintiff was not even informed of the arrangement, but placed his case in the hands of Mr. Starbuck, agreeing to do whatever he should advise, without asking any questions; and that when he gave his evidence he did not even know of the agreement to recommend a nolle prosequi. The counsel for the prosecutor was also district attorney of the county.
It cannot justly be deduced from this statement that any means were agreed to be employed to obtain the discharge of Nickelson other than by openly, and in accordance with the well known and established practice prevailing in courts of criminal jurisdiction, invoking the action of the court in favor of an accomplice or co-defendant in a criminal indictment, of *367 whose testimony the government avails itself for the purpose of securing the- conviction of his confederate in the same crime.
The promised interposition in behalf of the plaintiff was upon the condition that he should testify to all he knew. The arrangement had not in view the suppression of any evidence, but rather the eliciting of the truth ; and the recommendation which the prosecutor agreed to give if the plaintiff should testify fully was simply that the course which was usual in such cases should be pursued. The plaintiff could not be called as a witness on the trial of the indictment except with the assent of the district attorney, and it was even then discretionary with the court whether or not to admit him to testify. If he appeared to be the principal offender he would be rejected. If the court admitted him and he testified fully and candidly, there was an implied promise of immunity on the part of the government. (People v. Whipple, 9 Cow., 713, 716.) Where the State desires to call as a witness one of several defendants, jointly indicted and tried, this can be done only by discharging the witness from the record, as by the entry of a nolle prosequi, etc. (1 Greenl. Ev., § 363.) If an accomplice be admitted to testify and appears to have acted in good faith in giving testimony, the government is bound in honor to discharge him. ( U. S. v. Lee, 4 McLean, 103.) The English practice under such circumstances is, when the witness makes a clean breast, to grant a pardon. The admission of accomplices as witnesses for the government, is justified by the necessity of the case, it being often impossible to bring the principal to justice without them. (1 Greenl. Ev., § 411.) It is difficult to see how an arrangement for obtaining evidence of this description,' on the usual terms and subject to the control of the public prosecutor and of the court, can be violative of any rule of public policy. In my judgment, public policy requires that good faith be observed with persons charged with crime, who are induced to testify undér such circumstances.
The cases relied upon on the part of the defence are of a *368 totally different character; they are cases of agreements between the criminal and the prosecutor, whereby, in consideration of some compensation or reward given by the criminal, the prosecutor agrees to forbear the prosecution, or to suppress or destroy evidence which might lead to a conviction. The statutes against compounding felonies and misdemeanors point out very distinctly the character of that offence. (2 R. S., 689, §§ 17, 18 ; 692, § 12.) They prohibit the taking of any money, property, gratuity or reward, or any engagement or promise therefor, upon any agreement or understanding to compound or conceal a crime, abstain from prosecuting or withhold evidence. These are the acts by which the course of justice may be interfered with and prosecutions may be stifled or embarrassed. And in all the cases which have been cited some of these vicious elements existed and appeared. In the often cited case of Collins v. Blantern (2 Wilson, 343, 349), a promissory note was given, by a friend of the accused in consideration of the agreement of the prosecutor not to appear and give evidence on a charge of perjury, and a bond of indemnity against the note was held void. In The Steuben County Bank v. Mathewson (5 Hill, 249, 251), the bond'sued upon had been given upon an agreement that the bank should surrender up1 a note alleged to be forged, and should not make a criminal charge for forging the note or obtaining the money thereon. In Porter v. Havens (31 Barb., 343), the notes in suit were executed by one Havens, against whom criminal proceedings were pending, and were placed in the hands of a third party to be delivered to Barron, the payee, when the criminal proceedings against Havens should be “ discontinued and ended; ” and upon the further condition that Barron, the payee, should not arrest Havens or cause' him to be arrested on any process whatever, but should cease all proceedings against him. The plain intent of this agreement was to suppress the criminal prosecutions. In Conderman v. Hicks (3 Lans., 108), the note was given to obtain the release of the maker and the termination of criminal proceedings for false pretences, pend *369 ing against Mm, but without the approval of the court or magistrate, as provided in 2 Revised Statutes, page 730, section 66, etc.
But the present case exhibits no such elements ; the agreement looked not to an abandonment of the prosecution but to bringing the indictment to trial; not to the withholding of evidence but to the procuring it; not to any secret effort to shield the plaintiff, but to an open application to receive him as State’s evidence, with the consequences which usually follow.
A further ground for sustaining the validity of the agreement is to be found in the provisions of the Revised Statutes which permit the compounding, by leave of the court, of misdemeanors for which the injured party has a remedy by civil action. (2 R. S., 730, §§ 66, 67, 68.) These provisions permit the court before whom the indictment is pending to exercise, in its discretion, the power of ordering a perpetual stay of the prosecution, on the injured party appearing and acknowledging satisfaction, and on the payment of costs. In the present case the charge was false pretences, by which the prosecutor had sustained pecuniary damages. This offence has been held to amount, not to a felony, but merely to a misdemeanor (Fassett v. Smith, 23 N. Y., 252), and therefore falls within the provisions of the statute. The prosecutor might, therefore, lawfully have agreed to appear before the court and invoke its action under the statute referred to. That course was not pursued, and therefore the statute cited has not, perhaps, a direct bearing upon this case, but it affords some indication of the policy of the law upon the subject under consideration.
The whole point of the case lies in this: An agreement to cripple, stifle or embarrass a prosecution for a criminal offence, by destroying or withholding evidence, suppressing facts, or other acts of that character, is against public policy, and void. In such cases the parties take the responsibility of interfering with, and by secret or indirect means, frustrating the administration of justice. But an agreement to lay the *370 whole facts before the court, and to leave it to the free exercise of the discretionary powers vested in it by law, is not in itself wrong, and is not rendered illegal "even by a stipulation on the part of a prosecutor to exert such legitimate influence as his position gives him in favor of the extension of mercy to a guilty party.
Some other points have been suggested on the part of the defence which merit observation. The argument that the plaintiff’s agreement to testify was not a sufficient consideration for the defendant’s engagement has been already met. The plaintiff was privileged against criminating himself, and the waiver of this privilege constituted a consideration.
But it is further urged that any agreement to give testimony in consideration of a reward is against public policy, having a tendency to induce the commission of the crime of perjury ; and in a well considered case (Pollak v. Gregory, 9 Bosw., 116), it was held that an agreement to pay a witness for testifying, on condition that his evidence should lead to a result favorable to the party calling him, was illegal and void. But the evil of such an agreement consists in the condition, which holds out to the witness the temptation of falsifying his testimony, so as to produce the result upon which his compensation is to depend. Where the witness simply consents to make a disclosure of the truth, and, as in the present case, he has no inducement to produce any special result, the mischief is not apparent. In Yeatman v. Dempsey (7 C. B. [N. S.], 628 [J. Scott]), an agreement to testify; divested of such a condition, was sustained ; and also in Webb v. Page (1 Carr. & Kir., 23), in the case of an expert.
The defendant deemed the testimony of the plaintiff essential to enable him to recover the judgment in question. It is conceded and found that the plaintiff performed his part of the agreement; and it is fairly presumable that the judgment was obtained by means of his testimony. It would be exceedingly unjust to enforce that judgment against him under the circumstances.
*371 The judgment should be reversed and a new trial ordered, with costs to abide the event.
Church, Ch. J., Allen and Folger, JJ., concur.
Grover, Andrews and Miller, JJ., dissent.
Judgment reversed.