## JOHN DONALD *v.* EDWARD BEALS ET AL.

RECORD—CONSTRUCTIVE RECORD—ACTUAL RECORD—INNOCENT PURCHASER—
MORTGAGE.—A mortgage is deemed in law to be recorded when deposited
for record in the recorder's office; but where there is a conflict in the dates
between the actual record as it appears on the record book and the con-
structive record by the indorsement made upon the instrument at the time
when it was deposited, the latter must give way to the former, unless those
dealing with the former had notice and knowledge of the latter.

ID.—ID.—ID.—ID.—ID.—NOTICE.—The facts in this case, as stated by the
Court, *held* sufficient to put a subsequent mortgagee upon inquiry.

NOTICE—AGENT.—If an agent, at the time of effecting a purchase, have
knowledge of any prior lien, his principal is affected thereby.

MISTAKE—MORTGAGE—EQUITY.—Of the power of a court of equity to re-
form a mortgage by going back to the original mistake, and correcting all
subsequent mistakes which grow out of it, there can be no doubt.

APPEAL from a judgment for the plaintiff, and from an or-
der denying a new trial, and from an order amending findings,
in the Twelfth District Court, County of San Mateo. DAIN-
GERFIELD, J.

*H. C. Firebaugh*, and *H. K. Moore*, for Appellant.

In order that defendant Crane be affected and charged with
notice of the claim of plaintiff that his mortgage be first, the
proof of notice to Crane of this claim must be beyond all rea-
sonable doubt. (*Rogers* v. *Wiley*, 14 Ill. 65; *Smith* v. *Yule*,
31 Cal. 180.) So that it must be direct and positive, not mere-
ly sufficient to put the party on inquiry. (*Fort* v. *Bunch*, 6
Barb. 60; *Jackson* v. *Green*, 8 Johns. 107.)

The design and intention of the Registration Act was to give
constructive notice of the facts which appear on the face of the
record. (*Chamberlain* v. *Bell*, 7 Cal. 292.)

And besides, it is not sufficient to have *constructive* notice of
facts putting the purchaser on inquiry; there must be *actual*
notice of such facts.

*Fox & Ross*, and *Fox & Kellogg*, for Respondent.

The record contained enough to give notice, and the knowl-
edge of the attorney was the knowledge of his principal.

McKEE, J. :

This case arises out of an action in equity, to obtain a decree that a mortgage, given by the defendant Beals to the plaintiff, is entitled to priority of lien over a mortgage given by him to the defendant Newell, which has been assigned to the defendant Crane, and to compel the recorder of San Mateo County to correct the date of the record of the first mortgage.

The Court below found in favor of the plaintiff, and from the decree, and an order denying a new trial, the defendant Crane brings the case before us on appeal.

It appears, by evidence in the transcript, in which there is no substantial conflict, that the defendant Beals, on the 27th of March, 1878, being indebted to the plaintiff Donald, by a promissory note for the sum of $3,000, payable one year after date, executed to him a mortgage upon certain lands in San Mateo County, to secure the payment of the same; and on the 30th day of March, 1878, being also indebted to the defendant Newell, by a promissory note for $2,000, payable one year after date, he executed to her a mortgage upon the same lands to secure its payment.

These mortgages were given in renewal of subsisting mortgages upon the same lands in favor of the same parties. But as the causes of action on those were about to expire by limitation, Beals proposed to renew them in the same order in which they had been recorded—the Donald mortgage being the first. To this, the mortgagees assented; and it was expressly understood and agreed between them, that the new mortgage to Donald should be first executed and recorded, so as to constitute a prior lien upon the lands. Pursuant to this arrangement, Beals executed the mortgages as already stated—the Donald mortgage on the 27th and the Newell mortgage on the 30th of March, 1878. Both mortgages were acknowledged by the mortgagor on the 8th day of April, 1878; and on that day Mrs. Newell satisfied of record her first mortgage, by releasing the same on the margin of the record of the mortgage. That being done, both the new mortgages were afterwards—viz., on the 15th day of April, 1878—deposited for record in the recorder's office of San Mateo County, in the following order of time,

viz., the Donald mortgage at 4 o'clock P. M., and the Newell
mortgage at 5 o'clock P. M.   And on the same day, satisfaction
of record of the first Donald mortgage was also entered.

Up to this point, the arrangement and understanding of the
parties had been faithfully executed.   Mrs. Newell had released
her old mortgage on the 8th of April, 1878; Donald did not
release his until the 15th day of April, but both the new mort-
gages were deposited in the recorder's office on the 15th, the
Donald mortgage an hour before the other.

When the mortgages were thus deposited, it was the duty of
the recorder, under the law, to indorse upon each of them the
time when it was received by him, noting the year, month,
day, hour, and minute of its reception; and to record the same
without delay, in the order, and as of the time, when it was re-
ceived for record; and he was also required to note, at the foot
of the record of each, the exact time of its reception, and the
name of the person at whose request it was recorded.   (§ 4241,
Pol. Code.)   This duty the recorder performed, by indorsing
on the Donald mortgage that it was deposited for record April
15th, 1878, at 4 o'clock P. M.   But the Court below finds that
the notation of the date was "hastily and carelessly written,
and may be read for April 18th, instead of April 15th, the true
date of the filing, indorsement, and recording of the same."
And, in fact, it was indexed and recorded before the Newell
mortgage; but in transcribing it in the mortgage book the re-
corder, by mistake, noted at the foot of the record that it was
recorded April 18th, 1878, and this mistake he carried into the
certificate of registration, which he annexed to the mortgage, so
that it was made to appear that the mortgage had been record-
ed on the 18th day of April, 1878, when, in fact, it had been
actually recorded on the 15th, an hour before the Newell mort-
gage.   A mortgage of posteriority of date and lien was thus,
by the appearance of the record, given precedence to one of
priority of date and entitled to priority of lien.

But the Donald mortgage was deemed in law to have been
recorded at the moment of time when it was deposited in the
recorder's office with the proper officer for record.   (§ 1170,
Civ. Code.)   Therefore, the indorsement made upon it by the
officer at the time of the deposit was as effectual, for the

purpose of registration, as though the mortgage itself had been transcribed in the proper book of the recorder's office.

Yet, where there is a conflict between the actual record, as it appears in the record book, and the constructive record by the indorsement made upon the instrument, at the time it was deposited for record, the latter must give way to the former, unless those dealing with the former had notice and knowledge of the latter. For the law protects those who, in good faith, acquire title or security upon land upon the faith of the record, and it would not allow slight circumstances or mere conjecture to overthrow rights *bona fide* acquired under deeds or mortgages appearing first on record. Courts of equity grant no relief against such purchasers, because they have, at least, equal rights. But where one acquires a right with notice of ·the existence of a prior equity in conflict with the right which he acquires, he is not considered in law an innocent purchaser. Nor can good faith be predicated of a transaction which is merely colorable.

Now the assignment of the Newell mortgage was made under the following circumstances, viz.: Mrs. Newell, knowing that the Donald mortgage had been first deposited for record, had commenced an action against Beals alone to foreclose her mortgage, upon an optional clause in the mortgage that the entire debt should become due in default of the payment of the interest as it became due; and in the action she had filed a *lis pendens*. But while the action was pending, an attorney, "who had heard that the Donald mortgage was a prior lien upon the land," had discovered, by an inspection of the records, that her mortgage, according to the record, was, in fact, first recorded, and suggested to her the discovery by asking her "why she was so foolish as to go to the expense of changing her mortgage for Donald's benefit, and whether her mortgage was in fact a second mortgage." Upon this hint, she answered that "she did not know whether it was so or not, but she wished he would go and see." He accordingly took from the records a memorandum in pencil of the recorded dates of the two mortgages, and handed it to her. She then engaged him to make a more formal abstract of the facts for her use, and upon receiving it, she assigned her note and mortgage to the defendant Crane,

and upon a recordation of the assignment, dismissed her action to foreclose. The attorneys in that transaction are now the attorneys for the assignee in this, and by them it is contended, in his behalf, that in taking the assignment he was an innocent purchaser—bought, in fact, without notice of the prior equity of the plaintiff, and in good faith. But the record does not sustain him in that character. All the circumstances attending the assignment show that he had notice, or, at all events, a knowledge of facts which were sufficient to put him, as a prudent man, upon inquiries which would have led him to the truth existing in the knowledge of his assignor and of her attorney. But he made no inquiries of his assignor or attorney, either about the mortgage itself, which he had consented to buy, or the title to the mortgaged premises—rather, indeed, studiously avoided making inquiries—and the assignor and the attorney were as studiously silent upon the subject. Negotiations for the purchase of the mortgage he had none to speak of. The entire transaction between him and his assignor seems to have been characterized more by the nervous haste of conscious pretense than by the calculation and deliberation of business. She owed him a promissory note of $500, and after she had satisfied herself that there was a mistake in the record of the Donald mortgage, she one day proposed to sell him her note and mortgage against Beals. He consented to buy, "if," as he said in his testimony, "the title was perfect and everything. If it was, he did not know but that he would." Of course, she did not inform him that the Donald mortgage had been first recorded; but, she says in her testimony, "I told him I knew nothing about it, and that he must go to the records." Yet to the records he did not go. If he had gone there, he would have found the relative dates and liens of the old mortgages between the same parties, the respective dates of their satisfaction, and the respective dates of the new mortgages given in renewal of the old. He would have found the fact that the new mortgage to Donald had been given first, and had been first indexed by the recorder in the proper book of the records of his office, and that Mrs. Newell had commenced an action to foreclose her mortgage against the mortgagor alone, in which she had sworn that the whole amount mentioned in her note

and mortgage was then due and owing to her. He would have thus ascertained that he was about to purchase a *chose in action* past due, and a mortgage subsequent in date to one also recorded, and prior in date and first indexed by the recorder, although by the notation of the record it appeared to have been subsequently recorded. These facts would have led him to the truth, if he had made further inquiries. But he failed to make them. He got the abstract of the dates of the registration of the two mortgages from the attorney, and upon looking at it, consented to take the assignment. He asked no questions about the abstract itself, or the mortgage, or the title to the mortgaged property. " I went," he says in his testimony, " according to that abstract, as the attorney had searched the record, and said that that was correct. * * * I acted wholly on everything that the attorney said in determining whether the title was good or not." Yet the abstract itself showed that the plaintiff's mortgage was prior in date, and that it was recorded subsequently to the other mortgage only " as appears by the record." No explanation was made or asked why that expression was inserted in the abstract in connection with the plaintiff's mortgage, and not with the other. But without any examination of the records as to title, and without any inquiries from those with whom he was dealing as to facts, he blindly purchased a $2,000 mortgage upon the face of a meager abstract or memorandum of dates of two conflicting mortgages. It is difficult to see how, under such circumstances, he can claim to be an innocent purchaser.

Everything in connection with the mortgage itself, and the abstract which he got from the attorney, and upon the face of which he claims to have purchased, put him upon inquiry. They notified him of something beyond. It was such notice as would have led any honest man, using ordinary caution, to make further inquiry before purchasing. Notice of any fact calculated to put him on inquiry is, in the absence of explanation by him, sufficient to charge him with notice of all instruments and facts in connection with them which· an inquiry would have disclosed. The rule is thus stated by. Selden, J., in *Williamson* v. *Brown*, 15 N. Y. 362: " That when a purchaser has knowledge of any fact sufficient to put him on in-

quiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser."

Besides, the attorney who prepared the abstract acted as such for both assignor and assignee. He had acquired a knowledge of the fact of the priority of the registration of the plaintiff's mortgage. He knew it when he suggested it to Mrs. Newell, and when he was preparing the abstract for her use, for he called the attention of the recorder to the notation of the record as a mistake. He admits that he " did not mention the fact to any one, and did not mention it in the abstract," but he seems to have purposely concealed his knowledge of the fact by the expression, " as appears by the record," which he used in the abstract. Acting as he did in the capacity as attorney or searcher for both the assignor and the assignee, it was his duty to make his knowledge known to the assignee. The knowledge of an attorney is the imputed knowledge of his client. It is the well-settled doctrine of English law, that if the agent, at the time of effecting a purchase, have knowledge of any prior lien, trust, or fraud affecting the property, no matter when he acquired such knowledge, his principal is affected thereby. "The general rule," said Mr. Justice Bradley in *The Distilled Spirits Case*, 11 Wall. 367, " that a principal is bound by the knowledge of his agent, is based upon the principle of law, that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of negotiation, and the presumption that he will perform that duty."

Whence it results that the appellant was not a purchaser in good faith of the mortgage in controversy, and that the Court below did not err in adjudging the priority of the mortgage lien of the plaintiff, and in correcting the mistake made in the notation of the record thereof. Of the power of a court of equity to reform a mortgage, by going back to the original mistake, and correcting all subsequent mistakes which grow out of it, there is no question. (*Quivey* v. *Baker*, 37 Cal. 465.)

Judgment and order affirmed.

McKINSTRY, J., and ROSS, J., concurred.