ABBEY *v.* TABER *et al.*

(*Supreme Court, General Term, Fifth Department.* October 23, 1890.)

1. TRUSTS—PRICE PAID BY THIRD PARTY.
    Where, upon a purchase of land, title is taken in the name of a third party, who advances the price, the conveyance is but a purchase-money mortgage, and does not come within 1 Rev. St. N. Y. p. 728, § 51, abolishing trusts in favor of one paying the consideration when the grant is made to another.

2. KNOWLEDGE OF AGENT—BONA FIDE PURCHASER.
    A party, acting as agent, who takes a mortgage from the grantee with the information before him, or readily attainable, that the purchaser was then, and for 25 years had been, in possession of the premises, or a good part thereof, as the ostensible owner, receives the mortgage for his principal, charged with all the equities of the purchaser.

Appeal from judgment entered upon the report of a referee.
The facts are fully stated in the opinion.
Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.
*H. J. Swift,* for appellant. *Norris Morey,* for respondents.

MACOMBER, J. This action was brought to foreclose a mortgage dated August 25, 1888, and recorded September 4, 1888, executed and delivered to the plaintiff by the defendant Bradford Taber as security for the payment of the

mortgagor's promissory note in the sum of $8,200, also bearing date August 25, 1888, and payable 30 days thereafter to the plaintiff's order, being given for moneys borrowed of the payee at that time by the maker. The defense interposed by the defendants Lasalle Taber, Henry W. Taber, Sarah Holcomb, and Ellen Holcomb, who are the only children and heirs at law of Niles C. Taber, deceased, and by the defendant Mary Taber, the widow of Niles C. Taber, was that the mortgagor was not at the time of executing the mortgage the owner of the mortgaged premises, but that the lands therein described belonged to the defendants, of which fact the mortgagee had knowledge or such notice as put him on inquiry before receiving the mortgage. This defense prevailed at the trial. The referee, under cross-answers served upon Bradford Taber and his wife, directed that they should execute a conveyance of the lands to the respondents. He also directed a money judgment against the defendant Bradford Taber for the amount of the promissory note. From each and every part of the judgment entered upon this report the plaintiff and the defendants Bradford Taber and wife have, under separate notices, brought this appeal. Niles C. Taber, under whom the respondents claim to be the owners of the mortgaged premises, being a brother of the plaintiff, died intestate on the 10th day of May, 1887, having then been in possession of some of these lands 25 years, and of the whole thereof more than 20 years. After his death, and up to the present time, the respondents, being the widow and all the heirs at law of Niles C. Taber, have continued such possession, claiming to be the owners thereof through Niles C. Taber, in whom, it is contended in their behalf, was the title at the time of his death. The paper or record title thereto was in the defendant, Bradford Taber, at the time he executed the mortgage to the plaintiff, and had been during the entire occupancy of the lands by the respondents and their intestate, the deeds of the several parcels thereof, five in number, being taken in the name of Bradford Taber, between the 18th day of April, 1862, and the 25th day of October, 1865. The evidence satisfactorily establishes the fact found by the referee, that each of these deeds was so taken in the name of Bradford Taber under an agreement between him and his brother Niles that the former should advance to the latter the purchase money for each parcel of land, and take the deed thereof as security for such loans. In accordance with this agreement Niles C. Taber entered into the possession of all of these lands as the several parcels were bought, and during his life he continued in the exclusive possession and control thereof, without objection or interference of Bradford Taber. Indeed, the latter never questioned Niles C. Taber's ownership thereof until after the latter's death. At the time of the above-mentioned agreement a large portion of these lands was not cleared, but the available parts thereof were cleared by Niles C. Taber, and reduced to a proper condition of cultivation, and a dwelling-house, barns, and other necessary farm buildings erected by him at his own expense, and in reliance upon such agreement with Bradford Taber. During this time also Niles C. Taber paid, or there was paid in his behalf, and Bradford Taber received from him or his children, interest on all these loans as though the deeds were securities for the advancements by which the purchases were made. The correct amount of such indebtedness was $6,800. Bradford Taber was paid in full therefor by a loan obtained from the Erie County Savings Bank by a mortgage of these premises dated October 1, 1880, which is a still subsisting lien on these lands, the interest upon which was paid by Niles C. Taber and his heirs to Bradford Taber up to April 1, 1889.

Upon the whole evidence it is abundantly established that all of this real estate was purchased for the sole benefit of Niles C. Taber. Though at times Bradford Taber appears as the formal party to the contract, or in the negotiations for the sale, yet in every such instance he was moved to it by Niles C. Taber. The evidence which has resulted in an adjudication that the deeds are but mortgages, is not wholly dependent upon the oral admissions or

declarations of the party chiefly affected, but rests in part upon matters in writing not necessary here to set forth in detail. These facts lead inevitably to the conclusion that as between the parties to the agreement the transaction rendered Bradford Taber a mortgagee to the amount of moneys advanced for the purchase of the lands, with the right given to Niles C. Taber, upon payment of the loans, to redeem the lands and compel a conveyance thereof to him. The statute abolishing resulting trusts in favor of one paying the consideration where the grant is made to another, (1 Rev. St. p. 728, § 51,) does not change the relation of the parties. The conveyance was but a mortgage for the purchase money, and does not come within the statute. The statute does not preclude the assertion of title taken by means of a conveyance for a specific and lawful purpose against one who attempts to retain the property in violation of his agreement, and in fraud of the true owner. *Carr* v. *Carr*, 52 N. Y. 260; *Dodd* v. *Neilson*, 90 N. Y. 247; *Brumfield* v. *Boutall*, 24 Hun, 451. The preliminary contention made in behalf of the respondents we deem well established, and therefore hold that Bradford Taber had only a lien upon these lands to the extent of his unpaid advances, and, notwithstanding the fact that the title deeds ran to him, he had not the legal right, as against Niles C. Taber and his heirs, further to incumber the property.

But the case, in its principal parts, rests upon other considerations than those affecting the existence and validity of this agreement of the parties, for, under the recording act, if the plaintiff, without knowledge or notice of the equities of the parties in possession, and in reliance upon the record title of the mortgagor, received the mortgage in suit in good faith, and for value, he would be entitled to a judgment of foreclosure and sale of the premises. The question presented by this proposition is, under the evidence, by no means free from difficulty. It should be stated that the plaintiff not only had no notice of the agreement between Niles C. Taber and Bradford Taber, but he personally had no knowledge of the fact that Niles C. Taber and his heirs had been in the possession and actual occupancy of the farm from the time the conveyances thereof had been delivered to the grantee. Furthermore, he advanced the full consideration of the note and mortgage, no part of which has been paid. His demand, therefore, that he be permitted to enforce the securities which he holds for the indebtedness ought not to be denied him except upon established facts showing that such enforcement would either contravene some principle of law or run counter to the equities existing between the parties. Yet, unless he occupies the place of a *bona fide* mortgagee, within the well-established meaning of the phrase, he cannot be permitted to enforce the mortgage against the persons shown to be the true owners of the lands. The plaintiff, who had little if any knowledge of the value of the security, relying doubtless upon the financial ability of the borrower, intrusted the business of taking the mortgage to his attorney and agent. Though there is no evidence of any notice to the plaintiff personally, yet he is chargeable with any knowledge of his agent acquired in the transaction, and if the latter had notice of the actual possession and occupancy of the mortgaged premises by the respondents the plaintiff must be deemed to be charged therewith to the same extent as though he had acted thoughout in his own behalf. Story, Eq. Jur. §§ 408, 408a; *Griffith* v. *Griffith*, 9 Paige, 315. It follows, that the plaintiff took the mortgage charged with all the consequences of the application of the rule stated by Judge SELDEN in *Williamson* v. *Brown*, 15 N. Y. 362, which is as follows: "The true doctrine on this subject is that where the purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right of title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a *bona fide* purchaser. This presumption, however, is a mere inference of fact, and may be repelled by

proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence on his part." The plaintiff, by his own testimony, is shown to be a man of much experience in business, loaning money in his own behalf, and for the bank of which he is president, upon securities, as well as upon the personal credit of the borrowers, with an eye single to the certainty of payment of the principal, together with all increments thereof not prohibited by law. Though, on the whole, we are disposed to give him the full benefit of his oath, that he neither knew nor had notice of any defect in the title to the farm, or of any equities of the respondents therein, yet, in the determination of the question of his good faith, the ordinary rules by which the business matters of keen men should be gauged must not be lost sight of. If, with a disposition to oblige an old friend and valuable patron, knowing that the borrower's financial condition was ample for the payment of the debt, irrespective of the proffered collaterals, the plaintiff did in this instance relax the usual precautions of wary creditors well known to him, and did, while in form taking a mortgage security, consciously aid by his complaisance the perpetration of a fraud upon others, though he had no direct notice of their rights, he should be brought under the rule above stated, and adjudged to hold his collateral in bad faith. The circumstances pointing to this conclusion are mainly derived from the testimony given by the plaintiff, and are, (1) he did not know in which quarter of Erie county the mortgaged premises were situated; (2) he knew there was a prior mortgage upon the same lands, but did not learn its amount; (3) he had no intelligent idea of the value of the land; (4) the mortgage was to run for 30 days only, and that, too, when there was no apparent exigency of the borrower, and the moneys were in fact furnished from time to time, and the whole not until half the credit had expired; (5) no appraisal of the lands was required; (6) the last appraisal thereof was when the Erie County Savings Bank made its loan of $6,800, the lands and buildings then being estimated at $13,400; (7) the last-mentioned loan was still outstanding, which with the loan made by the plaintiff ($8,200) aggregated an incumbrance of $15,000, a sum materially above the actual value of the property; (8) the immediate steps taken to foreclose the mortgage, without regard to the note, which, the plaintiff testified, had been negotiated by his bank on his indorsement. These facts go far to show that a reasonable inference to be drawn from the case is that the plaintiff became the tool of Bradford Taber. The latter, though intending to throw overboard the legal successors of his brother, knew that a direct assault could not prevail, as, for instance, an action against them in ejectment, for the fact of their equitable title was too well known to all parties. Hence his attack upon that title by indirection, by the intervention of third parties in which he should, in any event, get the full value of the farm. The not infrequent mutual device by seller and buyer of procuring a *bona fide* purchaser was resorted to, and it was done by that sort of intrigue which induces the purchaser to shut his eyes while the vendor operates for both. Yet the learned referee, whose report and masterful opinion show a most thorough examination of the case, does not in terms draw the inference which a legitimate deduction of established facts warranted, but contented himself with placing his decision upon the ground that the agent of the plaintiff, in negotiating the loan, was informed of the possession and occupancy by the respondents of the mortgaged lands, and properly imputing that knowledge to his principal. The agent and attorney of the plaintiff, who was made entirely familiar with the extent of the mortgaged property, the prior incumbrance thereon, and its supposed value, was also informed of the fact that such lands were in the possession and occupancy of other persons than the mortgagor, even their names being given him, though he could not recall them at the trial. Furthermore, he knew that the mortgagor was not then in possession, and he had not been for at least many years preceding this time. The referee has,

in his opinion, stated the case somewhat more favorably to the appellant than the testimony of the agent would, in our judgment, warrant, for he gives the agent credit for having been informed that the parties so in possession were tenants. Under this information given to his agent, the plaintiff was charged with the duty of ascertaining the character and extent of that possession by the respondents. If he had made inquiry of persons to whom a reasonably careful man would have deemed himself referred by that information, he undoubtedly would have ascertained the fact that for more than 20 years Nile C. Taber had been in possession of the whole, and of a good part thereof, for 25 years, ostensibly as the owner, and not in subordination to any person. With that information before him, or readily attainable, he received for his principal the mortgage, charged with all its intrinsic infirmities. In respect to the details of the account between Bradford and Niles, and how the sum of $445 came to be fixed upon by them as the annual interest upon the whole indebtedness chargeable against the farm, including the judgment of November 12, 1883, for $1,965.39, we think the solution given by the referee, though the evidence pertaining thereto is not very full, or altogether satisfactory, is entirely consistent with the principal features of the case, and is the best attainable from the facts laid before him. The judgment appealed from should be affirmed, with costs. All concur.