In the Matter of the Application of MARY R. HART for the Payment of a Legacy Bequeathed under the Last Will and Testament of FREDERICK KLOPPENBURG, Deceased.

Surrogate's Court, Kings County, April 4, 1929.

*Jonathan Holden,* for the petitioner.

*Harold E. Lippincott,* for the respondent.

*Bauerdorf & Taylor,* for the trustees.

WINGATE, S.   Subdivision 4 of the will of Frederick Kloppenburg, which was admitted to probate in this court on February 24, 1914, bequeathed to his nephew, Henry Kloppenburg, a legacy of $5,000, payable on the death of the testator's sister, Anna Miller, who died on or about August 28, 1928.

This is an application by an alleged assignee of such legacy for an order of this court directing the trustees under the will of Frederick Kloppenburg to pay over this legacy by virtue of her assignment.

The payment is contested by one Sarah Kloppenburg, who claims the moneys due under the legacy by reason of a prior assignment made to her by the beneficiary.   The answer of the trustees virtually amounts to an interpleader.

The facts, as disclosed by the testimony, show that Henry Kloppenburg, the beneficiary under the will, duly assigned all of his interest in this legacy to Sarah Kloppenburg by instrument executed and acknowledged on July 30, 1914. . A copy of this assignment was filed by her with the trustees on or about January 6, 1915, but it was never recorded in this court pursuant to the provisions of section 32 of the Personal Property Law.

Henry Kloppenburg was adjudicated a bankrupt in the United States District Court for the Southern District of New York in the year 1917, and listed this legacy as an asset of his estate. Thereafter his rights under the will were sold at public auction, pursuant to order of said court, to one John E. Sheehy.   This sale was confirmed, and on January 14, 1919, an assignment of Henry Kloppenburg's interest in the legacy was executed by the trustee in bankruptcy to Sheehy.

On December 15, 1922, Henry Kloppenburg purported to sell, and actually executed and delivered a further assignment of this legacy to Northchester Corporation, a New York corporation.   On its face this assignment, like its predecessor, is an absolute one, and although some testimony was adduced at the hearing to the effect that it was treated as though merely collateral security for a loan, such testimony conflicted with other statements made on behalf of the petitioner, and the weight of evidence indicates that the sale was an absolute one.

All transactions on behalf of the Northchester Corporation were conducted by one Jonathan Holden, and this same individual also appears as the sole active person in connection with the dealings in this matter of the petitioner herein. While disclaiming personal interest in the transactions, Mr. Holden, who appeared as the only witness on behalf of the petitioner, named only one officer of the Northchester Corporation, namely the president, who was his wife, and further admitted that the petitioner herein had, on occasion, acted as a dummy for him in some transactions.

Mr. Holden recorded the Northchester assignment in the office of this court on December 19, 1922. It does not clearly appear that at the time of such recording he was aware of the prior assignment to Sarah Kloppenburg, nor of the bankruptcy sale and assignment to Sheehy, but he was informed of such prior assignment to Mrs. Kloppenburg by a letter from the attorneys for the trustees on December 27, 1922.

Promptly thereafter he appears to have entered into negotiations with Sheehy, the assignee under the bankruptcy sale, and on January 30, 1923, he obtained an assignment to Mary R. Hart, the present petitioner, of Sheehy's rights in this legacy, which assignment was recorded in this office on February 6, 1923.

About the same time Holden brought pressure to bear on Henry Kloppenburg to return the consideration received by him for the assignment to the Northchester Corporation and obtained the execution by him and his mother of a note for the full amount paid by the Northchester Corporation. Suit was later instituted by Holden on this note, the action being settled by payment in full, with costs, this settlement including an assignment to Mr. Drew W. Hegeman, the attorney for Mrs. Kloppenburg, of the rights of the Northchester Corporation under its assignment. This assignment to Mr. Hegeman was executed on April 19, 1923.

The question for determination, therefore, is, which of the three outstanding assignments of this legacy is to receive priority, whether

*First.* The assignment to Mrs. Kloppenburg, executed July 30, 1914, but never recorded in this court; or

*Second.* The assignment to Mary R. Hart from Sheehy, procured January 30, 1923, by Holden, and recorded by him February 6, 1923, both of which acts occurred after he had actual knowledge of Mrs. Kloppenburg's assignment; Sheehy's assignment having been received by the latter from the beneficiary's trustee in bankruptcy on January 14, 1919, and never having been recorded; or

*Third.* The assignment which Mr. Hegeman received from the Northchester Corporation, based on the beneficiary's assignment to that corporation on December 15, 1922, and recorded by it

December 19, 1922, both of such events having occurred before the assignee was chargeable with notice of the prior assignments.

The determination of the rights of the parties on the foregoing facts depends upon an interpretation of section 32 of the Personal Property Law, which reads as follows:

" § 32. Transfers and mortgages of interests in decedents' estates to be in writing, and recorded. Every conveyance, assignment, or other transfer of, and every mortgage or other charge upon the interest, or any part thereof, of any person in the estate of a decedent which is situated within this state, shall be in writing, and shall be acknowledged or proved in the manner required to entitle conveyances of real property to be recorded. Any such instrument may also be recorded as hereinafter provided; and if not so recorded, it is void against any subsequent purchaser or mortgagee of the same interest or any part thereof, in good faith and for a valuable consideration, whose conveyance or mortgage is first duly recorded. If such interest is entirely in the personal property of a decedent, the conveyance or mortgage shall be recorded in the office of the surrogate issuing letters testamentary or letters of administration upon the said decedent's estate, or if no such letters have been issued, then in the office of the surrogate having jurisdiction to issue the same. * * *."

It is noteworthy that, so far as concerns the rights of creditors, this enactment differs radically from such statutes as those providing for the recording of conditional sales agreements (Pers. Prop. Law, § 65, as added by Laws of 1922, chap. 642) and chattel mortgages (Lien Law, § 230, as amd. by Laws of 1921, chap. 419), since the latter enactments invalidate an unfiled conditional sales agreement or chattel mortgage, as the case may be, as against creditors and subsequent purchasers or lienors in good faith, whereas section 32 invalidates the assignment only "against any subsequent purchaser * * * in good faith and for a valuable consideration, whose conveyance or mortgage is first duly recorded * * *."

This distinction is of especial importance in the present case in view of the assignment or attempted assignment by the trustee in bankruptcy of the rights of the beneficiary. Since a trustee in bankruptcy is vested under the Bankruptcy Act not only with the rights of the bankrupt but also of any of his creditors, it is obvious that were the provisions of section 32 respecting recording of assignments of interests under wills the same as those under the chattel mortgage and conditional sale recording acts, the assignment made by the bankrupt to Sarah Kloppenburg in 1914 would have been void and the purchaser at the trustee's sale would have taken a superior title. Under section 32, however, the right

to avoid such prior assignment is given only to a subsequent *bona fide* purchaser for value who records his assignment before the recording of the assignment previously given. The result, in substance, is that the trustee in bankruptcy, in this connection, is vested only with such rights in the subject-matter as the bankrupt had at the time of adjudication, and since, had the bankruptcy not intervened, it would have been within the power of the beneficiary under the will to make a second assignment, that power passes to the trustee in bankruptcy, and the assignment by him, pursuant to the order of the court, vests in the purchaser precisely the same rights which a similar second assignee from the beneficiary would have received had bankruptcy not intervened. Such purchaser in either case would, at the moment of receiving the assignment, take a right inferior and subordinate to the rights of the prior assignee on the unrecorded assignment; but if he was a purchaser for value and without notice, he would have it in his power to make his right superior to that of the first assignee by complying with the terms of the statute and recording his assignment as therein permitted.

It follows, by like process of reasoning, that it is within the power of the beneficiary named in the will to make any number of successive assignments with like effect. In each instance the assignees after the first would receive no present right, but each in turn, if a *bona fide* purchaser for value, would become potentially the prior owner of the legacy dependent on his prior compliance with the terms of the statute.

This is precisely what occurred here. Sarah Kloppenburg received her assignment in 1914. She purchased the absolute right to receive the legacy, but that right was subject to divestment if some subsequent assignee for value and without notice recorded his assignment before she did. The next step was the sale to Sheehy by the trustee in bankruptcy. At the moment, he received nothing, but it was in his power to perfect his claim by recording his assignment prior to the recording of Mrs. Kloppenburg's assignment and prior to the recording by some subsequent *bona fide* assignee for value of any other assignment which the beneficiary might issue. The subsequent sale by the beneficiary to the Northchester Corporation in 1922 vested similar rights and similar potentialities in that assignee. It was a purchaser in good faith and for value and whereas at the moment of assignment it took no actual interest in the legacy it received the power by reason of the terms of the statute to postpone both Mrs. Kloppenburg and Sheehy to its rights. This is precisely what happened. On December 19, 1922, before he had received any notice of the rights of either of the

prior assignees, Mr. Holden recorded this assignment as required by the statute, thereby making the Northchester Corporation the owner of the rights given under the will of Frederick Kloppenburg to Henry Kloppenburg.

Although not vital for the determination of the question here presented, it seems that the recording of the Northchester assignment was the last dealing with the matter by any person who might bring himself within a definition of a purchaser for value without notice. Mr. Holden received notice of the prior assignments on December 27, 1922, and as he was the attorney and active agent of both the Northchester Corporation and the petitioner, Mary R. Hart, any acts subsequently done by him in this connection for either of them were charged and tainted with the actual notice which he had thus received. (*Williamson* v. *Brown*, 15 N. Y. 354, 359; *Bennett* v. *Buchan*, 76 id. 386, 390, 391; *Abbey* v. *Taber*, 11 N. Y. Supp. 548.)

The Northchester assignment was sold to Mr. Hegeman, the attorney acting for Mrs. Kloppenburg. The Sheehy assignment was purchased by Mr. Holden, at least nominally for Mary R. Hart, and was recorded by him after such purchase. Both had actual notice of the entire chain of facts. It is, therefore, unnecessary to determine whether the statutory requirement of absence of notice of prior assignments relates to the time of purchase of the assignment or to the time of record of the instrument transferring the right. If the former, then both the purchase by Hegeman of the Northchester assignment and the purchase by petitioner of the Sheehy assignment were so tainted, and Mrs. Kloppenburg is entitled to receive the amount of the legacy by virtue of her original assignment; if the latter, then only Holden would be barred and the Northchester assignment having been duly recorded by a holder for value, without notice, would represent the paramount right, and this having been assigned to Mr. Hegeman who was acting on behalf of Mrs. Kloppenburg, she would be entitled to receive the legacy by virtue thereof. (*Leask* v. *Hoagland*, 64 Misc. 156; *Farmers' L. & T. Co.* v. *Hendrickson*, 25 Barb. 484, 488; *Tyler* v. *Strang*, 21 id. 198, 203; 11 C. J. 521.)

It follows, therefore, that on the record as presented, Sarah Kloppenburg is entitled to the legacy bequeathed to Henry Kloppenburg under the 4th subdivision of the will of Frederick Kloppenburg, in preference to Mary R. Hart, and that the petition should, therefore, be dismissed.

Submit decree accordingly.