[L. A. No. 2473. Department One.—June 17, 1910.]

## C. A. RAUTH, Respondent, v. SOUTHWEST WARE-HOUSE COMPANY (a Corporation), Appellant.

APPEALS TAKEN AT DIFFERENT TIMES—EMBODIMENT IN ONE TRANSCRIPT.—*Under rule two of the supreme court, where an appeal by a defendant from a judgment against him, and an appeal from an order denying his motion for a new trial, are taken at different times, and the notice of intention to move for a new trial was regularly given before the appeal from the judgment was taken, the record on both appeals may be embodied in the same transcript, without any stipulation or order therefor.*

SALE—WARRANTY OF KIND OR DESCRIPTION—REPRESENTATION OF FACT.—
As a general rule, on the sale of a chattel as being of a particular
kind or description, stated as a fact, a contract is implied that the
article sold is of that kind or description. Substantially, the de-
scription is warranted. To make this rule applicable, the circum-
stances must be such as to amount to a representation of fact on
the part of the vendor that the article is of the particular kind or
description.

ID.—ACTS OF VENDOR AS REPRESENTATION OF FACT.—If the buyer in
terms asks for the particular kind and the seller purports to comply
with his request, he would probably be held to warrant the article as
being of that kind, although he may not have made any declaration
in words to that effect. In other words, the circumstances may be
such as to make the acts of the vendor constitute such a representa-
tion.

ID.—WARRANTY OF VARIETY OF BARLEY—EVIDENCE INSUFFICIENT TO
SHOW WARRANTY.—In an action to recover damages for the breach
of an alleged warranty that certain seed barley sold was of a variety
known as "bearded," it is held, upon a review of the evidence, that
there was no demand by the purchasers, at the time of the sale, in
terms for bearded barley, and no representations by the seller that
the barley sold was of that variety; that there was nothing warrant-
ing the conclusion that there was a custom or usage at the place of
the sale, known to the seller or so notorious that one engaged in the
grain business must be presumed to know it, to the effect that where
the word "barley" was used without qualification it meant only
bearded barley and did not include beardless barley, and that there
was nothing to show that the seller had any knowledge or reason to
suspect that the fact that the barley sold was of the beardless kind,
if known to the buyers, would operate as an influence against its
purchase.

APPEAL from a judgment of the Superior Court of Orange
County and from an order refusing a new trial. F. E. Dens-
more, Judge presiding.

The facts are stated in the opinion of the court.

Percy R. Wilson, and W. W. Middlecoff, for Appellant.

Horace C. Head, for Respondent.

ANGELLOTTI, J.—This is an appeal from a judgment in
favor of plaintiff and from an order denying defendant's
motion for a new trial, in an action brought by plaintiff to
recover damages on account of breach of alleged warranty,

fraudulent representations, and fraudulent concealment, in. the sale to plaintiff and four other persons, who have assigned their claims to plaintiff, of certain seed barley for the season of 1906-7. The trial resulted in a verdict and judgment for plaintiff in the sum of $12,155.21.

There is but one transcript in the matter of these appeals. and there is no stipulation or order that both appeals may be presented upon the same transcript. The appeals were taken at widely different times. The record shows that notice of intention to move for a new trial was regularly given before the appeal from the judgment was taken. Plaintiff suggests that, in view of the fact that the appeals were taken at different times they cannot be presented upon the same transcript in the absence of stipulation or order, and that they must therefore be dismissed. A complete answer to this claim is. to be found in rule two of this court.

Aside from the amount of seed barley purchased and the amount of damage, the cause of action stated on behalf of Rauth and that on behalf of each of his assignors, B. F. Nimmo, M. Wooley, Thomas Jessup, and M. Erreca, were exactly the same. As to each it was substantially alleged as. follows: He was farming for the season of 1906-7, a portion of the land of the Irvine Company known as the San Joaquin Rancho in Orange County, under a lease from the owner. Defendant offered to sell him seed barley for planting thereon, showed him a sample thereof and represented that the same was good, clean seed barley, such as is usually sown and raised in Orange County and in the locality where his land is situated. By said representations it induced him to believe that the same was "the variety known as. bearded barley." It further represented that it had bought the same for seeding purposes to sell to the farmers of Orange County and of the locality where his land was situated, that. it was well threshed, that the beards were all broken off, and that it was fit and proper for the purpose of growing grain in said locality. An inspection of the barley did not show that it was not bearded barley. He believed all said representations, and relying thereon bought and planted such seed. Defendant at the time of such sale well knew that such barley was not the common or bearded barley but was the variety known as beardless barley, and was not the kind or variety

usually called barley in Southern California and in Orange
County, and knew that he believed he was purchasing the
variety called bearded barley, and purposely concealed the fact
that it was beardless barley from him, well knowing that he re-
lied on its representations and advice and judgment regarding
the quality and fitness, and that he was purchasing the same
for seed in a locality where bearded barley is usually sown, and
that he would not purchase the same if he knew it to be
beardless barley. His land was suitable for the growing of
such barley as is usually grown in Orange County, but the
beardless barley was not suited to the climate or soil of such
land or any land in that locality. The consequence was that
it produced a very poor crop, much less in quantity than com-
mon or bearded barley would have produced.

Defendant admitting the sales of the seed barley denied all
the other allegations of the complaint.

The main contention of defendant upon this appeal is that
the evidence is insufficient to warrant a conclusion of any
breach of warranty, fraudulent representation or fraudulent
concealment on its part in the matter of the sales of this seed
barley. Admittedly the seed barley was what is styled beard-
less or bald barley as distinguished from the ordinary bearded
barley, owing to the absence of the long awn or bristle which
extends from each seed. We will assume, as is probably true,
that the evidence as to the crops realized on the San Joaquin
Rancho during that season from this and other seed barley
was sufficient to support a conclusion that this particular seed
barley was not as well adapted to the particular soil in which
it was planted and the climate of that locality as would have
been seed barley grown in that locality. The evidence did
show, however, that some of it planted at Santa Monica that
season produced thirty sacks of grain to the acre. This barley
was what is called in Orange County northern barley, having
been grown in the Tehachapi Valley in Kern County, which
is many miles north of Orange County, and which has a much
greater altitude, all of which was made clear to each of the
buyers. But there was absolutely nothing in the evidence
to indicate that the difference in yield was not due solely to
the fact that this seed barley was grown in a different locality
and at a greater altitude rather than to the fact that it was
"beardless" barley instead of barley of the bearded variety.

The evidence of two witnesses elicited for the purpose of showing that prior experiments with that kind of barley had shown it to be unfitted for that locality was entirely insufficient to support any conclusion to that effect. One of these witnesses testified that some eighteen or twenty years before seed of that kind had been used in that locality for a couple of years but that its use was then abandoned. The other witness testified that in about the year 1876 he saw a little beardless barley growing in that locality. Neither testified as to where the seed came from nor as to whether it produced as well as the bearded kind, nor as to the reason for its use not being continued. There is nothing to indicate that any of the parties to the transaction here involved ever heard of any use of beardless barley seed in this locality. There is no pretense that the beardless barley is in any degree inferior to or different from bearded barley either in quality or productiveness. So far as appears the only difference is in the fact that the bearded barley has the long awn or bristle extending from each grain, while the beardless barley has only short bristles.

The evidence was entirely without conflict as to certain facts. Defendant established its grain and warehouse business in Orange County in 1906. Its manager, C. J. Haines, saw the crop from which this seed barley came growing in the Tehachapi Valley. He observed that it was beardless. The evidence shows that this does not mean that the grains are entirely without awns, but that such awns are very short. It appealed to him as being very clean and fine and he thought it would be excellent for seed in the southern part of the state. He therefore bought the crop as it stood, and the threshed barley was shipped to Orange and Los Angeles counties. Three carloads of this were sent to Irvine in Orange County and there sold in small lots. It had threshed very clean and fine and was an attractive seed in every way. Among the purchasers were Rauth and his four assignors. As to each of these the evidence showed without conflict and the jury found in response to special interrogatories that the selling agent told the buyer that the barley was northern barley raised at Tehachapi, but did not tell him that it was bearded barley, that the buyer said he desired to buy seed barley but did not state that he desired bearded barley, that the buyer

examined the barley before purchasing it, and that the seed barley which defendant sold was of good quality and germinated and came up after being planted. There is nothing to indicate that the agents of defendant did not act in the best of faith throughout this matter unless that is shown by their failure to explain to the purchasers that the seed barley was of the beardless type as distinguished from the bearded type. Nor was there any breach of warranty unless the fact that the barley sold was of the beardless kind instead of the bearded shows such a breach.

The evidence of the buyers as to the transactions between themselves and defendant is very brief.

As to Rauth, Haines told him that he had some good barley that he had seen growing at Tehachapi, and it looked so nice that he had bought the whole field. He showed him a sample and Rauth examined it. Rauth told Haines that they had done a good job of bearding up in that county, and Haines said it was threshed with a combined harvester. Erreca dealt solely with Spencer, a foreman at the warehouse. His transaction was late in the season, after the sales to the others on the San Joaquin Rancho. Spencer said: "I have good barley seed. All San Joaquin farmers use same barley and he gave me eight or nine or ten names buying his barley seed." Erreca looked at the barley. "I told Spencer, this barley has not much beard. It looks like this barley was raised in some dry country. Yes, he says, this was raised in a dry country. Not much beards." Wooley dealt with Haines. Haines told Wooley that he had some good northern barley grown at Tehachapi, that he thought it would be good seed barley and good for Wooley to plant. He showed him a sample and it appeared to Wooley to be good. Before buying, Wooley and Mr. Krauss, the manager of the Irvine Company, went together to look at it, and Krauss said that he thought that it would be a good investment and that it would make a better crop to get new barley like this.

Nimmo dealt with Spencer. He called at defendant's warehouse to see about seed barley and Spencer showed it to him. He spoke to Spencer about its being bearded closely and of some of the kernels being cracked, and asked if it would affect the sprouting, and Spencer said that he did not think so. Krauss had told him that defendant had some northern seed,

and that if any of the tenants wished to change seed they could find some at defendant's warehouse. Nimmo did wish to get seed produced in some locality other than Orange County.

Jessup dealt with Haines. The barley was shown to him, and Haines said it was from Tehachapi, that he had it shipped for seed and thought it would be a good thing for Orange County, a good change of seed. Jessup spoke of it as being so dry, white, bright, and bearded closely and Haines said that it was raised in a dry climate and he supposed that was the reason it was bearded so much closer.

It is doubtless true that if this barley was sold by defendant as being of the ordinary bearded kind, instead of the beardless, and that the partial failure of the crops of plaintiff and his assignors was due to the fact that it was of the beardless rather than the bearded kind, of which, as we have said, there is no sufficient evidence, defendant would be liable as for a breach of warranty. It is a generally accepted rule that on the sale of a chattel as being of a particular kind or description, stated as a fact, a contract is implied that the article sold is of that kind or description. Substantially, the description is warranted. This was the rule applied in *Wolcott* v. *Mount*, 36 N. J. L. 262, [13 Am. Rep. 438], and 38 N. J. L. 496, [20 Am. Rep. 425], where the buyer expressly asked for early strap-leaf red-top turnip seed, and the seller declared the seed to be such, and it proved to be an entirely different and inferior kind; in *White* v. *Miller*, 71 N. Y. 118, [27 Am. Rep. 13], on a sale of large Bristol cabbage seed; and in *Moody* v. *Peirano*, 4 Cal. App. 411, [88 Pac. 380], on a sale of white Australian wheat. To make this rule applicable, the circumstances must be such as to amount to a representation of fact on the part of the vendor that the article is of the particular kind or description. If the buyer in terms asks for the particular kind and the seller purports to comply with his request, he would probably be held to warrant the article as being of that kind, although he may not have made any declaration in words to that effect. In other words, the circumstances may be such as to make the acts of the vendor constitute such a representation. But in this case, as we have seen, there was no demand, in terms, for bearded barley. The demand of the buyers was simply for seed bar-

ley and they were given good seed barley of a kind not shown to be in any way different in quality from the common bearded variety theretofore grown in that locality.   There is nothing in the evidence heretofore referred to upon which to found the conclusion of a representation or warranty that the barley was of the bearded kind, unless we can hold that the jury was warranted in concluding that there was a custom or usage in Orange County known to defendant or so notorious that one engaged in the grain business must be presumed to know it (2 Page on Contracts, sec. 604), to the effect that where the word "barley" was used without qualification it meant only bearded barley and did not include beardless barley.   An attempt was made to show such a custom or usage, but in addition to the fact that the evidence was directed to the existence of such a custom only at the time of the trial, which was nearly two years after the transactions, such evidence, in our judgment, fell far short of the degree of clearness and certainty essential to show a custom or usage so notorious that defendant must be presumed to have known it, for actual knowledge was not shown, to the effect that the term "barley" did not include barley exactly like the common bearded variety ordinarily grown in Orange County except that it grew without the long bristles found on such barley. As the bearded type had been the kind almost exclusively grown in that county, of course when the word "barley" was used therein it ordinarily referred to bearded barley, and ordinarily when one ordered "barley" he received barley of the bearded kind.   Common bearded barley was spoken of and quoted in market reports simply as "barley."   This was practically the sum and substance of the evidence, though some of the witnesses in response to the questions of counsel for plaintiff to that effect dignified the thing by calling it a custom or usage.   The one witness as to market quotations did not pretend to testify that beardless barley was ever quoted other than as simply "barley."   "Barley" and "Chevalier barley" were the only two kinds he testified to as being separately quoted.   Chevalier barley, as we know, is a different quality of grain, and, as the witness testified, is probably quoted at a different price.

Learned counsel for plaintiff relies on section 1767 of the Civil Code, which provides that "one who sells or agrees to

sell personal property, knowing that the buyer relies upon his advice or judgment, thereby warrants to the buyer that neither the seller, nor any agent employed by him in the transaction, knows the existence of any fact concerning the thing sold which would, to his knowledge, destroy the buyer's inducement to buy." The answer to this is that the evidence is entirely destitute of any sufficient support for the conclusion that defendant or either of its agents, Haines and Spencer, had any knowledge or reason to suspect that the fact that this barley was of the beardless kind, if known to any of the buyers, would operate as an influence against its purchase.

What we have said negatives the idea of any fraudulent concealment or fraud of any kind on the part of defendant.

We perceive no ground in the evidence for holding defendant legally responsible for the partial failure in the crops of plaintiff and his assignors. In view of our conclusion in this regard, it will be unnecessary to consider any of the other points made for reversal.

The judgment and order denying a new trial are reversed.

Shaw, J., and Sloss, J., concurred.