[Civ. No. 4290. Second Appellate District, Division Two.—November 28, 1923.]

## W. M. BROCK, Respondent, v. NEWMARK GRAIN COMPANY, INC. (a Corporation), Appellant.

[1] SALES—SONORA SEED WHEAT—EXISTENCE OF VARIETY—KIND SOLD—EVIDENCE—FINDINGS.—In this action for damages for alleged breach of contracts of warranty to furnish "Sonora seed wheat," the evidence was sufficient to support the findings of the trial court that there was a wheat commonly known in the Imperial Valley (where the wheat was to be grown) as Sonora wheat, that plaintiff and his assignors had requested Sonora wheat, and that the product from the seed received from defendant was not Sonora wheat.

[2] ID.—SALE OF PARTICULAR KIND OF WHEAT—WARRANTY.—Plaintiff and his assignors having each stated to defendant's agent at defendant's place of business that he had come to get Sonora seed wheat, and said agent having replied that he had it and showed samples which he stated were Sonora seed, and in some instances exhibited the billing to his branch of defendant's business, bearing the name "Sonora seed wheat," it was immaterial that the contract of sale contained no express warranty that the seed should be of a particular variety.

[3] ID.—REPRESENTATION OF FACT—WARRANTY.—Where the circumstances surrounding a sale are such as to amount to a representation of fact on the part of the vendor that the article sold is of a particular kind as ordered in terms, he will be held to warrant the article as being of that kind, although he may not have made any declaration in words to that effect.

[4] ID.—QUANTITY THAT WOULD HAVE BEEN PRODUCED—EVIDENCE—JUDGMENT.—Plaintiff and his assignors having testified to having raised profitable crops from Sonora seed wheat both during the year immediately preceding and that following the year they planted the seed in controversy, and they having testified further as to quantity of wheat per acre produced from the seed in controversy, and two of plaintiff's assignors, as well as three other farmers, having testified that the Sonora seed wheat which they sowed that same year, some of it at the same time and under identical conditions, produced a given quantity per acre (which was several times greater than that produced from the seed pur-

2. Questions relating to warranty that seed is true to name, notes, 37 L. R. A. (N. S.) 79; L. R. A. 1916C, 1012.

Warranties and conditions upon sale of seed, nursery stock, etc., notes, Ann. Cas. 1918B, 72; Ann. Cas. 1918E, 485; 16 A. L. R. 859.

chased from defendant), and the trial court having given judgment for only about one-fourth of the amount demanded in the complaint, it could not be said there was no evidence to enable the trial court to determine the amount of wheat that would have been raised on the same ground had the seed been Sonora.

[5] Id. — Distinguishing Features — Evidence. — In this action for damages for alleged breach of contracts of warranty to furnish "Sonora seed wheat," the evidence having shown that distinguishing features, both in appearance before harvest and in quality and quantity of grain produced, existed between Sonora wheat and white club wheat (that being the only other wheat referred to in the testimony), such evidence was properly received and given consideration.

[6] Id. — Sales Slips — Incomplete Contract — Parol Evidence. — The sales slips or receipts made out by defendant's agent not having been intended as complete evidences of agreements, defendant's contention that evidence was improperly admitted to contradict a written contract between defendant and plaintiff was erroneous and without merit.

APPEAL from a judgment of the Superior Court of Imperial County. Phil D. Swing, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bicksler, Smith & Parke for Appellant.

E. R. Simon for Respondent.

CRAIG, J.—This action is one brought to recover damages for alleged breach of contracts of warranty to furnish "Sonora seed wheat." There are seven causes of action, the respondent suing upon one contract entered into with the Newmark Grain Company by himself, and six other contracts received by him through assignments from other farmers. The cases were tried before the court without a jury, and judgment was rendered in favor of plaintiff for $6,005.90, from which judgment this appeal is taken.

The facts involved in the seven causes of action are substantially the same. The complaint alleges, and the evidence shows, that W. M. Brock applied to the agent of the Newmark Grain Company, at Brawley, California, to purchase Sonora wheat to be used as seed. M. O. White was appellant's agent at Brawley, and he sold seed wheat to Brock which he represented to be Sonora wheat; neither Brock nor

any of the other six farmers whose claims are involved, nor White, had sufficient knowledge of Sonora wheat to be able to distinguish it from other wheat with any degree of certainty by merely examining the kernels, although Brock and White and some of the others were well enough acquainted with that variety to know its appearance when growing.

It is also in evidence that the Imperial Valley is naturally arid, so that irrigation is necessary to produce crops; that the climate is very warm during the month of June, and that the time to sow this spring wheat is during the months of January and February, in order that it may mature before the extreme heat of the summer. On January 28, 1919, Brock purchased the seed wheat as above stated, and in the early part of the following month he sowed it on thirty-two acres of land which he had prepared for that purpose. The soil was well adapted to raising the variety of spring wheat known as Sonora; he irrigated it and cared for it in the customary manner, and did not discover that the wheat was not Sonora wheat until it began to head. In due time the crop was harvested. It appears that the seed which was furnished Brock and his assignors was a variety known as "club wheat" other than Sonora wheat. The former is a hard wheat, requiring two or three weeks longer to mature than Sonora wheat, which is classed as a soft milling wheat. From this it results that the club wheat, if sown when this was, is not adapted to being grown in Imperial County for milling purposes. The court found from evidence to which we shall refer later that Brock's land, if sown to Sonora wheat, would have produced 22,500 pounds in addition to the quantity of wheat which he did produce from the Newmark seed, and that allowing for the expense of harvesting the additional yield, he was damaged in the sum of $652.50. It was also found that plaintiff's assignors thereby lost, in production and revenue, respectively, 12,200 pounds, $353.80; 30,300 pounds, $878.70; 38,600 pounds, $1,119.40; 78,750 pounds, $2,283.75; 18,750 pounds, $543.75; 6,000 pounds, $174.

Appellant relies principally upon the contention that the evidence does not warrant the findings in a number of essentials. The court found generally that the allegations contained in the complaint were true, and that none of the

allegations contained in the answer were true or were sustained by the evidence. Appellant avers that there is "no evidence" that there is a wheat classified as Sonora wheat; that there is "a total failure of proof" that the defendant sold to plaintiff and his assignors a wheat of different classification than actually ordered; and that there is "no evidence" to sustain numerous other elements necessary to the plaintiff's case. It will serve no good purpose to quote extensively from the testimony of the witnesses, but we find substantial evidence to sustain each of the material allegations of the complaint, and, consequently, the findings of the court that these allegations are true.

[1] Upon the issue as to whether or not there is a wheat commonly known in the Imperial Valley as Sonora wheat, Brock testified that he raised it in 1918 and 1920, and distinguished it from his 1919 crop produced by the seed here in controversy; that the wheat which bore the earlier, heavier crop, he knew as the type "Sonora wheat." Hertel, a graduate from a college of agriculture, and former farm adviser of Imperial County, testified that he made a study of special wheat conditions in that locality, as to the better varieties for Imperial County, and that there is a wheat in said county commonly known as Sonora wheat, which grows more compactly and closer together than other varieties, and with a golden color, which is not characteristic of them, and that he would know this type and be able to distinguish it at a distance of 100 to 300 yards. The witness testified that the exhibits from plaintiff's 1919 crop had no Sonora wheat among them. Caldwell, one of plaintiff's assignors, and Kaylor, another of plaintiff's witnesses, testified that there was wheat in the Imperial Valley known as Sonora, and described it, identifying heads which they knew as "White Sonora," among other exhibits upon the trial.

Concerning appellant's claim that there was no evidence that the wheat sold by the defendant was not that which plaintiff and his assignors requested, the record discloses that White, defendant's agent, and the various purchasers testified that they asked for Sonora wheat, and that the product from the seed which they received was not Sonora wheat.

[2]   Appellant further argues that there was no express
warranty contained in the contract of sale of the seed in
question, and that under the circumstances, as shown by
the evidence, no warranty was implied 'that the seed should
be of any particular variety, or would produce any stated
quantity. The evidence amply sustains the allegations and
the court's findings to the effect that the defendant delivered
to plaintiff and his assignors seed wheat, representing and
warranting that it was Sonora wheat, and that the plaintiff
and the other purchasers accepted the same, relying upon
such representations and warranties. There can be no doubt
that the defendant's agent and the purchasers all under-
stood that the seed sold was to be Sonora wheat, and if this
was true, it would be immaterial that no warranty was
made as to the quantity to be produced. Each one testified
that he stated to White at the defendant's place of business
that he had come to get Sonora seed wheat, and that White
replied that he had it, showed them samples which he stated
were Sonora seed, and in some instances exhibited the bill-
ing to his branch of defendant's business, bearing the name
"Sonora seed wheat."

But it is urged that as the several parties who purchased
wheat claimed to know what Sonora wheat was, as grown
in Imperial Valley, and since they saw the seed and knew
what they wanted to purchase, there could be no legal reli-
ance upon the representations of defendant's agent that it
was Sonora wheat.

[3]   The law in California has uniformly implied that
where the circumstances are such as to amount to a repre-
sentation of fact on the part of the vendor that an article
sold is of a particular kind as ordered in terms, he will be
held to warrant the article as being of that kind, although
he may not have made any declaration in words to that
effect. (*Hughes* v. *Bray,* 60 Cal. 284; *Rauth* v. *Southwest
Warehouse Co.,* 158 Cal. 54 [109 Pac. 839] ; *Firth* v. *Richter,*
49 Cal. App. 545 [196 Pac. 277].) Fraud of the vendor
is not essential to implied or express warranty of a com-
modity sold by name or character. In *Polhemus* v. *Hei-
man,* 45 Cal. 573, 579, the opinion in *Henshaw* v. *Robins,*
50 Mass. (9 Met.) 83 [43 Am. Dec. 367], is quoted with
approval, wherein it was said that "To create an express
warranty the word 'warrant' need not be used, nor is any

precise form of expression necessary, but every affirmation, at the time of the sale of personal chattels, amounts to a warranty.'' In that case indigo was sold, but subsequently was discovered to consist of Prussian blue, chromate of iron and potash, so prepared as to deceive skillful dealers, but an order for indigo was filled with this preparation, and it was held to constitute a warranty that it was indigo.

The facts found by the trial court, and which are supported by evidence, are not reviewable, and it must be regarded as established that these purchasers ordered, and defendant's agent sold, Sonora seed wheat, which was of a character and quality unquestionably understood by all the parties. They had raised it before this transaction, and had sold their crops to appellant, and these sales by an agent unskilled in distinguishing it in the kernel from similar varieties, to farmers admittedly unable to detect the difference until near harvest time, of a grain of inferior grade, could not be satisfactorily justified by the argument that the buyers saw the wheat in the warehouse. It is not contended, nor does the evidence indicate, that there was willful misrepresentation, but it is shown that some of the purchasers questioned the genuineness of the seed, and that appellant's agent said it had been raised in the San Joaquin Valley, and that it was perhaps the locality which rendered it a little smoky in appearance, but that it was Sonora wheat. Nor is the mere fact that Sonora seed wheat may belong to a general class known to the trade as ''club wheat'' a substantial foundation for the argument, as advanced by appellant, that any ''club wheat'' may satisfy the requirements of an order for Sonora seed wheat.

It is insisted by appellant that if a buyer accepts goods after an examination of them, with knowledge that they do not correspond with the contract, he cannot recover in an action based upon a breach of warranty, and *Rauth* v. *Southwestern Warehouse Co.,* 158 Cal. 55 [109 Pac. 839], is cited as authority for the rule stated. While we assume that such is the law, this case is distinguished from the instant one in that there was ''absolutely nothing in evidence to indicate that the difference in yield was not due solely to the fact that the seed barley was grown in a different locality and at a greater altitude,'' and by the further fact that ''the evidence showed without conflict and the

jury found in response to special interrogatories that the
selling agent told the buyer that the barley was northern
barley raised at Tchachapi, but did not tell him that it was
bearded barley.'' On the other hand, it was there held
that in the sale of a chattel as being of a particular kind
or description requested, a warranty would be implied. The
only other authorities cited by appellant which are here
worthy of comment are *Newmark & Co.* v. *Smith,* 26 Cal.
App. 339 [146 Pac. 1064], and *Alexander* v. *Stone,* 29 Cal.
App. 488 [156 Pac. 998]. In the former case it was said
that the sole question before the court was whether the
buyer was entitled to inspection as a condition precedent to
the making of payment; and in the latter, certain woolen
goods were sold without representation as to kind or quality,
the court saying that ''both parties, by reason of their
occupation, had expert knowledge of the kinds of cloth in
question,'' so that mere ''puffing'' of goods by the statement
that they were first class amounted to no more than an ex-
pression of opinion, and not the representation of a fact.
In the case at bar the evidence warrants the inference that
the purchasers had no such expert knowledge as that an
examination of kernels of Sonora seed wheat would enable
them to determine its identity.

*Firth* v. *Richter,* 49 Cal. App. 545 [196 Pac. 277], pre-
sents facts very similar to those of the instant case. There
the purchasers requested Valencia orange trees, whereupon
the dealers delivered to them trees represented to be of that
variety; that it was impossible to determine whether or not
the trees were of the kind ordered, and the buyers accepted
them, relying upon the statement that they were Valencia
orange trees. When they bore fruit it was for the first time
discovered that they were not Valencias. Upon appeal from
a judgment in favor of the purchasers it was said:

''In the case at bar it appears that the buyers definitely
limited their request by asking for Valencia orange trees,
and the seller not only delivered the trees in direct response
to that request, but further, in a written contract agreed
to deliver Valencia orange trees. We are aware that, as
shown by the evidence to which we have referred, the par-
ticular trees were first selected by the buyers. Appellant
had bought from O. M. Bert a quantity of trees, including
those delivered to respondents. The trees were growing in

rows in Bert's nursery. At the request of appellant, Bert exhibited to respondents certain rows of trees which he said were all Valencia orange trees. Respondents then selected these particular trees from the rows thus designated, and those are the trees that were delivered. No charge of bad faith is made herein, but, on the contrary, the court found and all the parties admit that there was no such bad faith or deception; nevertheless appellant assumed the responsibility of selling these trees as Valencia orange trees, and there is nothing in the evidence showing any conduct on the part of respondents which would estop them from claiming the benefit of that warranty. The terms used were sufficient to state an express warranty. (*Polhemus* v. *Heiman*, 45 Cal. 573, 578, 579.)''

*Newhall Co.* v. *Hogue-Kellogg Co.*, 56 Cal. App. 90 [204 Pac. 562], held that: "Where an article of a particular variety or type is ordered by name and the seller purports to furnish the same, with or without any express statement that the article furnished is of the kind ordered, a warranty of the identity of the variety or kind arises. (*Flint* v. *Lyon*, 4 Cal. 17, 21; *Purge* v. *Albany Nurseries, Inc.*, 176 Cal. 313 [168 Pac. 343]; *Firth* v. *Richter*, 49 Cal. App. 545 [196 Pac. 277]; *Rauth* v. *Southwestern Warehouse Co.*, 158 Cal. 54, 60 [109 Pac. 839].)''

[4] Appellant next asserts that there is no evidence to enable the trial court to determine the amount of wheat claimants would have raised on the same ground had the seed been Sonora. Plaintiff and his assignors testified to having raised profitable crops in 1918 and 1920 from Sonora seed, and that their crops in 1919 from the seed in controversy ran from one to five and one-half sacks per acre, weighing from 87 to 128 pounds per sack. Two of the farmers interested in this action, and three of their neighbors, testified that the Sonora seed wheat which they sowed in this same year, some of it at the same time and under identical conditions, produced from six and one-half to eighteen sacks per acre, weighing from 127 to 140 pounds per sack. Kaylor, one of the assignors, harvested but six and a half sacks per acre of the Sonora wheat, but appellant's seed which he sowed beside it at the same time produced but three sacks per acre. Some rust appears to have struck these crops, but it was testified that this did not

damage them more than ten per cent, and there were instances where the rust problem was negligible. The evidence was clear and uncontradicted on these amounts, and it is difficult to imagine how a more intelligible comparison could be shown as a basis for computation of damages. It was further testified that portions of the crops from ordinary club wheat were of little or no value, and that Sonora wheat grown in the same and other years was sound and marketable. The court gave judgment for about one-fourth of the amount demanded in the complaint, and it would seem that all of these factors were taken into consideration; at any rate, it is the peculiar province of the trial court to weigh this evidence, and its conclusions will not be reviewed upon appeal.

[5] It was objected consistently throughout the trial, and is here insisted, that the evidence continually reflects the fact that the claimants called a certain kind of wheat which had been raised in Imperial Valley "Sonora wheat," but that there is no distinguishing feature when it comes to classifying the so-called Sonora wheat with the only other wheat referred to, i. e., white club, and that the court erred in permitting witnesses to testify to comparisons from identified samples, and to the fact that the former would produce three times as much yield as the latter. The evidence shows that distinguishing features exist; this is true both in appearance before harvest and in quality and quantity of the grain produced. It follows that these facts were material to the determination of the issues before the trial court, and the evidence was properly received and given consideration.

[6] The contention of appellant that evidence was improperly admitted to contradict a written contract between the defendant and the plaintiff and is erroneous is without merit. The documents offered and received in evidence were merely sales slips or receipts and were obviously not intended as complete evidences of agreements.

It is insisted that the poor results obtained from the seed sold by the defendant might have been due to any one of six other causes than the fact that the wrong seed was sold. For instance, it is said that wheat should be planted in November in Imperial Valley, whereas this was not planted until February. A complete answer to this is that

there is substantial evidence to the fact that a successful crop may be produced by planting in February. This was testified to by witnesses Hertel, Kaylor, Young, Carner, and others. It is also a fair conclusion from the fact that a number of these farmers actually planted Sonora wheat in February, and raised three times as much crop as was obtainable from defendant's seed under similar conditions. Under these circumstances, of course, the findings of the trial court are not subject to review.

Again, the argument that the differences found to exist between the wheat produced from defendant's seed and that ordinarily characterizing Sonora wheat are due to the peculiar climatic conditions in Imperial County and other causes specified is disposed of in the same way, that there is evidence to sustain the court's findings, and it is immaterial that there is also some evidence to the contrary. Likewise, the rulings admitting evidence of various witnesses concerning the conditions existing must be sustained. Any error in permitting certain witnesses to give their conclusions without laying proper foundation in connection with this phase of the appeal are harmless, since there is ample testimony not subject to that objection to establish the essential facts, and especially to show that Sonora wheat is a distinct variety which under the conditions shown to exist would produce substantially a greater crop than club wheat, and that the failure to secure a normal return of Sonora wheat was due to the fact that seed of that variety was not supplied by the appellant.

There being no other points of sufficient merit to require a ruling the judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.